ARMSTRONG, Plaintiff-Appellant, v. COLLETTI, Defendant-Respondent.

Court of Appeals

*No. 77-863. Submitted on briefs December 20, 1978.—Decided February 15, 1979.*
(Also reported in 276 N.W.2d 364.)

For the plaintiff-appellant the cause was submitted on the briefs of *Rikkers, Koritzinsky & Rikkers* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Schlotthauer, Johnson, Mohs, MacDonald and Widder,* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   This is an action for the unpaid balance on a contract and installment note given pursuant to the contract for the sale by the plaintiff (Seller) and her now deceased husband[1] to the defendant (Purchaser) of all of the outstanding common stock of a corporation which operated a restaurant known as "Mr. Steak" in Madison, Wisconsin. The judgment of the circuit court dismissed the complaint and amended complaint. We affirm.

[1] Plaintiff has succeeded to the interest of her husband.

The issue is whether a provision in the contract that the common stock retained by Seller as security becomes the property of the Seller on default and all payments by Purchaser to Seller shall be retained as liquidated damages, is Seller's exclusive remedy for Purchaser's default.

October 20, 1969, Seller accepted an offer to purchase the "stock in trade, goodwill, fixtures, equipment, lease, franchise agreement and 100% of the corporate stock" for "$115,000.00 less the book value at the date of closing of the tangible assets of the corporation plus the net worth of the corporation on the date of closing" payable as follows: "$5,000.00 at closing and an additional $35,000.00 on or before January 5, 1970," with the balance "covered by a contract" payable in monthly payments over a period of ten years with interest at the rate of 7% per annum. The offer to purchase made no provision for notes. As security for the payment of the purchase price, the Seller was entitled to a second mortgage on all the furniture, fixtures and equipment being sold, plus a pledge of the stock being purchased.

The offer also provides,

. . . The pledge agreement shall provide that if the buyer shall default on any required regular monthly payment, seller shall notify buyer of that default by registered mail and buyer shall have twenty days after receipt of said notice to rectify such default. In the event buyer does not cure such default within said period, seller shall have the right to vote the pledged stock and to go into possession and operate the business . . .

When said default has been cured for a period of thirty days, purchaser shall be entitled to retake possession and operate the business. In the event purchaser shall default requiring seller to take possession of the premises on three occasions any amounts paid under this contract shall be defaulted and the stock and assets shall be reassigned to the seller.

On any particular default, purchaser shall have a one year period in which to make up said default and upon his doing so possession shall be returned to him subject to the above provision but in the event a default is not made up within a one (1) year period, any amounts paid under this contract shall be defaulted and the stock and assets shall be reassigned to the seller. During said one year period seller may not assign, convey or sell said stock in any manner.

November 1, 1969, the parties signed a second contract which recited that Seller had sold the common stock to Purchaser for $125,041.58, $5,000 of which had been paid, with "the balance to be evidenced by two (2) negotiable promissory notes," one for $35,000 due January 5, 1970, and the other for $85,041.58 due November 1, 1979, payable in monthly installments. The contract recites that the stock certificates had been reissued to Purchaser and delivered to Seller as security. The contract further provides,

4. **Default and Liquidated Damages.** In the event of a default in the payments of the notes referred to in paragraph 1, Seller shall notify Purchaser of such default by registered mail. In the event Purchaser fails to cure such default within twenty (20) days from receipt of said written notice, Seller shall have the right to vote the pledged stock and to take over immediate possession of the Mr. Steak Restaurant of the corporation and operate said business without restriction of any kind. Purchaser shall have one (1) year from the date of said default to bring said payments current, provided, that the reasonable costs incurred by Seller in retaking possession and operating the business shall be borne by the business, including a reasonable salary payable to Seller as manager. Any profits earned by the business during the period of default, shall be applied on the notes. When any such default has been cured for a period of thirty (30) days, Purchaser shall be entitled to retake possession and operate the business. However, in the event Purchaser shall default requiring Seller to take possession of the premises on three (3) separate occasions, or,

in the event that any one (1) default in payment under said notes is not cured within one (1) year from the date of default, the stock of the corporation shall become the sole property of Seller and all payments made by Purchaser to Seller shall be retained by Seller as liquidated damages, and this Contract shall terminate, and Seller (*sic*) shall have no further right, claim or interest in or to the stock of the corporation or against Seller.

The $35,000 note due January 5, 1970, has been satisfied. The $85,041.58 note has not been paid in full and is the subject of this lawsuit. The note contains the following acceleration clause:

Upon default in the payment of any such installment when due not cured within one (1) year from the due date of such payment or upon the default in the payment of three (3) installments, the entire unpaid balance of this note shall become immediately due and payable without presentation or demand or notice of protest or other notice of any kind, all of which are hereby expressly waived.

The case was tried to the court. The court found little assistance in and did not rely upon the testimony of the parties. Seller testified that she and her husband were unhappy about the purchase price of $115,000 and Purchaser agreed to increase it. Purchaser testified he agreed to pay the higher price only in exchange for a limitation on the Seller's remedies. The court found that Purchaser's position was the only one which logically explains the actions of the parties; that while language in the offer might be construed as a limitation of remedies, it was more ambiguous than the limitation in the November contract; and that it must be assumed that the "clear and express limitation of remedies in the contract was bargained for between the parties and expresses their common intent." The court found that the note "is merely the provision for the mechanics of payment" and the acceleration clause "does not represent the sub-

stantive agreement between the parties." The court concluded that the Seller's exclusive remedy in the event of default was to retake the stock and retain Purchaser's payments and therefore dismissed the complaint.

Construction of a contract is essentially one of determining the intent of the parties. It is normally a matter of law for the court. If the contract is ambiguous, the question of intent is one for the trier of fact. An appellate court will not disturb construction of an ambiguous contract made by the trier of fact unless it is contrary to the great weight and preponderance of the evidence. *Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 379, 254 N.W.2d 463 (1977), and cases cited. Seller urges that we redetermine the construction of the contract as a matter of first impression because the court gave little weight to the testimony of the parties. We will do so.

The November contract and the two notes were executed at the same time in the course of the same transaction and therefore are construed together. *Wipfli v. Bever,* 37 Wis.2d 324, 326, 327, 155 N.W.2d 71 (1967).

We agree with the court's finding that the contract contains an exclusive remedy for its breach. The default and liquidated damages clause distinguishes between optional and mandatory remedies. Seller has the "right to vote the pledged stock and to take over immediate possession of the Mr. Steak restaurant of the corporation and operate said business without restriction of any kind" if a default on the notes is not cured within twenty days after written notice. That remedy is optional because it is a "right." But where defaults occur requiring Seller to take possession of the premises on three separate occasions or if a single default is not cured within one year,

[T]he stock of the corporation *shall* become the sole property of Seller and all payments made by Purchaser to Seller *shall* be retained by Seller as liquidated damages, and this Contract *shall* terminate, and Seller *(sic) shall* have no further right, claim or interest in or to the stock of the corporation or against Seller." (Emphasis supplied.)

This is mandatory language and pertains to situations separate and distinct from those covered by the optional remedy. Where part of the same paragraph dealing with default and liquidated damages contains permissive language as to the Seller's remedy in one situation and mandatory language as to Seller's remedy in another and more serious situation, it is reasonable to infer that the parties intended that the mandatory language creates an exclusive remedy.

Seller argues that this construction is erroneous because sec. 402.719(1)(b), Stats., provides that resort to a contractual remedy "is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." Section 402.719(1) applies to the sale of goods, not corporate stock. Sec. 402.105(1), Stats. We are urged to apply sec. 402.719(1) by analogy. We will not do so because we are convinced that this would do violence to the intent of the parties.

We do not agree that the note creates a remedy alternative to that in the contract. The contract tells us what the purchase price is and how it is to be paid. It tells us that the balance due after the $5,000 payment is "evidenced" by two notes and exactly how those notes are to be paid. It is silent as to acceleration in spite of the ease with which provision for acceleration could have been made, probably because acceleration is neither necessary in view of the default and liquidated damages clause nor compatible with it.

To hold that the acceleration clause in the note provides an alternate remedy for breach of the contractual promise to pay would cause the note which merely "evidenced" the debt to supersede the contract out of which the debt arose. The offer to purchase contained the rudiments of the default and liquidated damages clause which appears in the November contract. The offer made no provision whatever for a note and contemplated only that the balance due "shall be covered by a contract."

Either the default and liquidated damages clause or the acceleration clause must fall. We can account for the continued existence of the former. We cannot account for the creation of the latter and it seems to us to have no rational connection with the contract and its predecessor offer. We hold that the default and liquidated damages clause is Seller's sole remedy.

The circuit court properly dismissed the complaint and amended complaint.

*By the Court.*—The judgment dismissing the complaint and amended complaint is affirmed.