Gwen SHADLEY,
Plaintiff-Respondent-Cross-Appellant,

v.

LLOYDS OF LONDON, Defendant,

Tim STYS, Pamela Stys and
Monticello Insurance Company,
Defendants-Appellants-Cross-Respondents.

Court of Appeals

*No. 2008AP2861. Submitted on briefs August 25, 2009.
—Decided October 27, 2009.*

2009 WI App 165

(Also reported in 776 N.W.2d 838.)

On behalf of the defendants-appellants-cross-respondents, the cause was submitted on the briefs of *Jason J. Franckowiak* of *Otjen, Van Ert & Weier, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Lauria Lynch-German* of *Hodan, Doster & Ganzer, S.C.*, and *Gary R. Schmaus* of *Schmaus Law Office*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Tim Stys, Pamela Stys, and Monticello Insurance Company (collectively referred to herein as "the Stys") appeal the judgment granting attorney fees to Gwen Shadley as the "successful party" under the language of the parties' house-moving contract. Shadley cross-appeals from the same judgment arguing that the trial court erred in: (1) construing two contract terms, "expected and ordinary stresses" and "risks of moving"; and (2) erroneously exercising its discretion in denying damages based on the same. We reverse the trial court's decision on attorney fees and remand the issue consistent with this opinion. With respect to the trial court's holding on damages, we find

that Shadley waived that issue by failing to raise it before the trial court, and we affirm the trial court on those grounds.

## BACKGROUND

¶ 2. In 1999, the City of Wauwatosa condemned Shadley's house because of flooding in her neighborhood. Rather than lose her home, which was particularly suited to accommodate the medical needs of Shadley and her daughter, Shadley decided to move the existing house to a different lot within the City. To facilitate the move, Shadley entered into a house-moving contract with Tim and Pamela Stys, doing business as Tim Stys House Moving. The contract, drafted by the Stys, contains a provision stating that "the unsuccessful party in the action shall pay to the successful party . . . the successful part[y's] attorney fees." The contract contains no definition of either successful or unsuccessful party.

¶ 3. After some delay, the Stys moved Shadley's house in January 2002; the house was permanently placed in its new foundation, and in April 2002, Shadley moved back into her home.

¶ 4. After the house had been moved to its new lot, Shadley claimed it was not in the same condition as before the relocation. She claimed that the house's structure suffered exterior and interior damage, including, among other conditions, cracked plaster, damage to the plumbing system, and broken interior tile. While some damage was to be expected in the move, Shadley alleged that other damage was attributable to the Stys' negligence and failure to perform under the contract.

¶ 5. Shadley initiated this action for negligence and breach of contract in January 2005 against Tim and Pamela Stys, and their insurer, Monticello Insur-

ance Company. Shadley pled negligence in delays[1] and negligence causing "structural damage." As to her second cause of action, Shadley's complaint concludes with one sentence alleging that the Stys breached the contract.

¶ 6. Twenty days prior to trial, pursuant to Wis. Stat. § 807.01(1) (2007–08),[2] the Stys offered Shadley a settlement in the amount of $25,000. Shadley did not accept the settlement offer, and the parties proceeded to trial.

¶ 7. A trial to the court was held from May 5 through May 9, 2008. During the trial, Shadley claimed damages in excess of $100,000 stemming from the Stys'

---

[1] The trial court rejected Shadley's argument that the Stys breached the contract's "expeditiously clause," which required the Stys to perform the work expeditiously, noting that it did not explicitly provide a date by which the work was to be completed. Shadley does not appeal from this portion of the trial court's decision.

[2] WISCONSIN STAT. § 807.01(1) (2007–08) provides:

> After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. If the plaintiff accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the plaintiff may file the offer, with proof of service of the notice of acceptance, and the clerk must thereupon enter judgment accordingly. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

alleged breach of contract and negligence.[3] The trial court, in its very thorough findings from all of the evidence and witnesses, found that the Stys were liable for breach of contract and negligence due to: (1) damage to the tile and from the sink removal in the amounts of $9750 and $401, respectively; and, (2) damage to the exterior of the home necessitating $4825 in repairs, for a total amount of damages of $14,976. In finding the Stys liable for only $14,976, the trial court held that many of the damages set forth by Shadley were not attributable to the Stys, for example, damage done to a piano Shadley left in the house, painting on the exterior and interior of the home, and her daughter's tuition.

¶ 8. Following the initial verdict, the parties filed competing motions after verdict related to attorney fees and costs. The Stys sought attorney fees under Wis. Stat. § 807.01 and under the contract as a "successful party." Shadley also sought statutory costs and attorney fees.

¶ 9. The trial court, rendering its decision on the motions after verdict with regard to attorney fees and costs, held that Shadley was the "successful party" as that term was used in the house-moving contract[4] and, therefore, awarded her the entire amount of attorney

---

[3] While the parties do not contest that Shadley claimed entitlement to at least $100,000 in damages, there is evidence in the record that indicates Shadley may have claimed damages approaching closer to $150,000.

[4] Section 12 of the house-moving contract discusses attorney fees: "[i]n the event that any action is filed in relation to this agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, of [sic] reasonable sum for the successful part[y's] attorney fees."

fees, $43,975, to be paid by the Stys.[5] The trial court found that, although the term "successful party" was not defined in the contract, BLACK'S LAW DICTIONARY 1154 (8th ed. 2004) defined "prevailing party" as the "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Because Shadley won a judgment on both her causes of action, despite the fact that she received far less in damages than she sought, the trial court concluded that she was the "prevailing party."

¶ 10. The court also rejected the Stys' motion asserting that they were entitled to their attorney fees as well as court costs under WIS. STAT. § 807.01(1). The Stys' motion was based on their Offer of Judgment for $25,000 as compared to Shadley's actual damage award of $14,976. The court found that while the American Rule prohibited the Stys' recovery of attorney fees under § 807.01(1), it did entitle the Stys to statutory costs. The trial court then set-off the Stys' statutory costs against the damages previously awarded to Shadley. The parties filed motions for reconsideration following the trial court's appropriation of attorney fees and costs, which the trial court denied. This appeal follows.

### DISCUSSION

### I. THE TRIAL COURT ERRED IN AWARDING SHADLEY HER ATTORNEY FEES IN THEIR ENTIRETY.

¶ 11. The principal issue on appeal is the trial court's construction of the attorney fees provision in the

---

[5] In finding Shadley to be the "successful party" under the contract, and thereafter, ordering the Stys to pay Shadley's attorney fees, the trial court must have implicitly found the Stys to be the contract's "unsuccessful party."

parties' contract. The attorney fees provision of the contract states, in relevant part:

> In the event that any action is filed in relation to this agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, of [sic] reasonable sum for the successful part[y's] attorney fees.

¶ 12. The trial court found that Shadley was the "successful party" and, by implication, that the Stys were the "unsuccessful party" under the terms of the contract. After the trial court deemed the terms of the contract ambiguous,[6] it equated "successful" under the contract with "prevailing" as defined by dictionaries and case law and found that "successful" means the party in whose favor judgment is entered, regardless of the amount of damages awarded. In so finding, the trial court awarded Shadley the entirety of her attorney fees, even though Shadley's recovery at trial was nominal in comparison to the damages she sought. Interpreting the house-moving contract to determine whether Shadley is a "successful party" and the Stys an "unsuccessful party" is a question of law that we review *de novo*. *See Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987). Construction of a contract is essentially a question of determining the intent of the parties. *Armstrong v. Colletti*, 88 Wis. 2d 148, 153, 276 N.W.2d 364 (Ct. App. 1979). Where the terms of the contract are plain and unambiguous, we will construe it as it stands. *Hortman v. Otis Erecting Co.*, 108 Wis. 2d

---

[6] Although the trial court never explicitly said the language of the contract is ambiguous, it implicitly said so when it concluded that each party could fairly argue it was the "successful party" within the language of the contract.

456, 461, 322 N.W.2d 482 (Ct. App. 1982). If, however, we find that the terms of a contract "are reasonably or fairly susceptible to more than one construction," we will find they are ambiguous. *See Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 213, 341 N.W.2d 689 (1984). "Whether a contract is ambiguous is itself a question of law" that we review *de novo. Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 322, 417 N.W.2d 914 (Ct. App. 1987).

¶ 13. The Stys argue that the attorney fees provision is ambiguous because it does not clearly define the terms "successful party" and "unsuccessful party." More specifically, the Stys contend that, even though the trial court found that they had breached the contract and that they were negligent in some respects, they were still the successful party because: (1) they limited Shadley's recovery to a nominal amount when compared to the total damages sought; and (2) they limited Shadley's recovery to an amount significantly less than the Stys had been willing to pay Shadley before trial, to wit, less than the $25,000 settlement offer.

¶ 14. Shadley admits that the terms "successful party" and "unsuccessful party" are not explicitly defined in the four corners of the contract. But she insists that the plain language of the contract makes the parties' intent clear, stating that "[a] reasonable person . . . would conclude that the 'successful party' is the one who bested the other in the outcome of the litigation." Turning to several dictionaries, Shadley further defines "successful" as "having achieved an aim or purpose," (citing OXFORD DICTIONARY OF CURRENT ENGLISH 912 (4th ed. 2006)), and as "a favorable result," (citing WEBSTER'S NEW WORLD DICTIONARY 644 (4th ed. 2003)). Shadley believes the trial court's determination properly places her squarely within each of these definitions.

¶ 15. Shadley's definitions of "successful" reveal the contract's apparent ambiguity. It does not seem to us that Shadley "bested" the Stys or that the result was "favorable" to her when she recovered only $14,976 after claiming a right to over $100,000. That her recovery was not "favorable" seems especially true in light of the Stys' previous $25,000 settlement offer. Additionally, it seems unlikely that Shadley's "aim or purpose" was to receive a $14,976 damages award after spending significantly more on attorney fees and turning down a $25,000 settlement offer. Accordingly, even adopting Shadley's definitions of "successful party," it is not at all clear to us that she is the party that satisfies them.

¶ 16. Nor is it clear that the Stys are the successful party using Shadley's proposed definitions of "successful." Surely it was the Stys' "aim or purpose" to be free from liability on all counts. The trial court's findings, that the Stys breached the contract and were negligent in some respects, are certainly not findings that are "favorable" or that demonstrate that the Stys "bested" Shadley.

██

¶ 17. Because at the very least, reasonable persons could differ as to who the successful and unsuccessful parties are in this case, we find the terms "successful party" and "unsuccessful party" to be ambiguous. Accordingly, we must construct the contract provision so far as reasonably practicable to "make it a rational business instrument" and "effectuate what appears to have been the intention of the parties." *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

199

¶ 18. The question of the parties' intent is a question of fact, and we will not disturb the trial court's finding unless it is contrary to the great weight and preponderance of the evidence. *Armstrong*, 88 Wis. 2d at 153. When attempting to decipher the parties' intent when drafting the attorney fees provision, the trial court equated the term "successful party" with the term "prevailing party," as that term is commonly defined in case law. Because the trial court determined that the term "prevailing party" was defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded," *see* BLACK'S LAW DICTIONARY 1154, it deemed Shadley the successful party under the terms of the contract. The trial court, however, failed to find that the parties' intended to equate the terms "successful party" and "prevailing party," and we find no evidence in the record to support such a finding. Therefore, we find the trial court's decision to be clear error, and we will independently attempt to decipher the parties' intent.

¶ 19. In *Borchardt*, after finding that a contract provision relating to attorney fees was ambiguous, we held, generally speaking, that when a contract provides for attorney fees, and the plaintiff recovers on a claim and the defendant recovers on a counterclaim, the attorney fees should be reduced in proportion to the amount the plaintiff recovered less the amount the defendant recovered. *See id.*, 156 Wis. 2d at 428. For example, in *Borchardt*, the trial court held that Borchardt, the plaintiff, was entitled to judgment on a promissory note, totaling $9469.20; however, a jury found Borchardt liable for negligent misrepresentation, and the court awarded the Wilks, the defendants, $9000 on their counterclaim. *Id.* at 423. While we remanded the case to the trial court to do the math, under our

holding, Borchardt's attorney fees should be reduced by 95.04%—the proportion by which his recovery was offset by the Wilks' counterclaim. We held that any other reading of the parties' contract provision "would obligate a party who, in whole or in part, has successfully prosecuted a claim against another[,] to pay the latter's attorney[] fees," a result we concluded would "border[] on the unreasonable." *Id.* at 428.

¶ 20. Here, the Stys urge us to apply our holding in *Borchardt* to this case because similar to our finding in *Borchardt*—that awarding Borchardt his attorney fees in their entirety rewards him for losing the counterclaim—awarding Shadley her attorney fees in their entirety "rewards . . . Shadley for bringing and pressing a clearly excessive and largely unsubstantiated claim, while unfairly penalizing [the Stys] for asserting a good faith and largely vindicated defense." In response, Shadley contends that *Borchardt* is distinguishable and therefore inapplicable because: (1) the jury found that Borchardt had engaged in some misconduct (negligent misrepresentation); and (2) the Wilks had filed a counterclaim, not merely successfully defended against Borchardt's claim. We find *Borchardt* to be instructive.

¶ 21. In construing an ambiguous contract provision, we must avoid unreasonable and unjust results. *See id.* Awarding Shadley her attorney fees in their entirety, when her damages award was only nominal in comparison to what she sought, is neither reasonable nor just. Such a result is "contrary to fundamental concepts of justice and fair play," and it seems highly unlikely to us that the parties intended such a result. *See id.* We agree with the Stys that interpreting the contract provision to entitle a plaintiff to the entirety of

her attorney fees, even when the plaintiff is only nominally successful, would encourage a plaintiff to bring excessive and unsubstantiated claims, so long as at least one claim is legitimate. The parties could not have intended such an unjust and irrational provision.

¶ 22. In so holding, we also find the grounds on which Shadley distinguishes *Borchardt* to be inconsequential. While Shadley was not found liable on a counterclaim like the plaintiff in *Borchardt*, her damage claims were significantly rebuffed. To the extent that the trial court's much lower damage award reflects the fact that Shadley filed excessive damage claims, the law disfavors such unreasonable claims. That is especially true where, as here, the plaintiff makes substantial damage claims and rejects the defendants' WIS. STAT. § 807.01 Offer of Judgment, which is later proven to be greater than the plaintiff's ultimate damage award. A reasonable interpretation of an ambiguous contract provision rewards neither liability on a counterclaim nor the filing of excessive claims. In the end, this case and *Borchardt* are more similar than different, and we find *Borchardt*'s analysis helpful when deciphering the parties' intent in drafting an attorney fees provision similar to the one in that case.

¶ 23. A more rational reading of the provision would grant Shadley that proportion of her attorney fees that equate to her success at trial. On remand, the trial court is directed to determine the total amount of damages Shadley sought to recover and calculate the percentage of that total on which she was successful, i.e., the amount Shadley actually recovered divided by the total amount of damages she sought to recover. Allowing Shadley to recover her attorney fees only in proportion to her success seems to us the better rea-

soned and rational interpretation of the parties' contract provision. The Stys, in turn, should receive that percentage of their attorney fees on which they were successful. That is the portion of Shadley's claims on which Shadley was not successful. For instance, if the trial court were to determine that Shadley recovered only 20% of the total amount of damages she sought, she should receive 20% of her requested attorney fees and the Stys should receive 80% of theirs, for a total of 100%.[7] With these directions, we remand the case back to the trial court to redetermine attorney fees and statutory costs.[8]

## II. SHADLEY WAIVED HER CLAIM THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S DAMAGES AWARD WHEN SHE FAILED TO RAISE THE ISSUE BEFORE THE TRIAL COURT.

¶ 24. Shadley claims the trial court erred in misconstruing and/or not defining two contract expressions —"expected and ordinary stresses" and "risks of moving"—and that the misconstruction led the trial

---

[7] On remand, the trial court must make factual findings as to each party's requested and appropriate attorney fees before apportionment of responsibility for the same.

[8] We note that in her response brief, Shadley argues that the trial court erred in awarding the Stys statutory costs and denying Shadley the same, pursuant to Wis. Stat. § 807.01(1); however, Shadley did not raise this issue in the statement of issues set forth in her cross-appeal, *see* Wis. Stat. Rule 809.19(1)(b), nor does she otherwise address this issue in the argument section of her brief, *see* Rule 809.19(1)(e). We, therefore, decline to address the issue. On remand, however, the trial court may find it necessary to readdress the issue of statutory costs after recalculating attorney fees.

court to erroneously conclude that the record was insufficient to prove Shadley's claims. Shadley asks us to reverse and remand the case for a new trial on damages. Yet Shadley never gave the trial court the chance to explain or rule on her argument. Despite bringing a motion after verdict and then a motion for reconsideration, Shadley never raised this issue before the trial court.

¶ 25. It is well-established law in Wisconsin that those issues not presented to the trial court will not be considered for the first time at the appellate level. *See State v. Gove*, 148 Wis. 2d 936, 940–41, 437 N.W.2d 218 (1989). By following the rule, this court "gives deference to the factual expertise of the trier of fact, encourages litigation of all issues at one time, [and] simplifies the appellate task." *State v. Caban*, 210 Wis. 2d 597, 604–05, 563 N.W.2d 501 (1997). The reason we exclude issues not raised before the trial court is because "the trial court has had no opportunity to pass upon them." *Hopper v. City of Madison*, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977).

¶ 26. Our review of the record reveals that, despite ample opportunity to do so, Shadley failed to raise these issues during trial, in motions after the verdict, or in subsequent motions for reconsideration. "The party alleging error has the burden of establishing, by reference to the record, that the error was raised before the trial court." *Young v. Young*, 124 Wis. 2d 306, 316, 369 N.W.2d 178 (Ct. App. 1985). Shadley has not shown that she raised this issue before the trial court, and additionally, when the Stys raised the issue of waiver in their response to her cross-appeal, Shadley made no rebuttal of it in her reply brief. Arguments not rebutted on appeal are deemed conceded. *See Hoffman v.*

*Economy Preferred Ins. Co.*, 2000 WI App 22, ¶ 9, 232 Wis. 2d 53, 606 N.W.2d 590.

¶ 27. Accordingly, we find that Shadley waived[9] these claims and conceded them to the Stys, and we will not address their merits.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[9] In using the term "waiver," we are aware of the recently decided case of *State v. Ndina*, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612, where our supreme court clarified the distinction between the terms "forfeiture" and "waiver." *See id.*, ¶ 29 ("Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' ") (citation omitted). Although forfeiture is applicable in the context, we use waiver to be consistent with the cases cited.