COURT OF APPEALS
DECISION
DATED AND FILED

December 8, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP739**

STATE OF WISCONSIN

Cir. Ct. No. 2003PA4PJ

IN COURT OF APPEALS
DISTRICT III

IN RE THE PATERNITY OF K. M. S.:

MARATHON COUNTY CHILD SUPPORT AGENCY AND
HEATHER M. GUSTAFSON,

   PETITIONERS-RESPONDENTS,

 V.

STEVEN E. SCHULTZ,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Marathon County: JILL N. FALSTAD, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Steven Schultz appeals an order denying his post-paternity action motions regarding child support. Schultz argues the circuit court erred by denying his request to invalidate an August 2007 temporary order and any child support and other obligations flowing from that order. We reject Schultz's arguments and affirm.

## BACKGROUND

¶2    In March 2003, Schultz was adjudicated as the father of Heather Gustafson's then four-and-one-half-year-old child. Schultz and Gustafson were granted joint legal custody, but Gustafson had primary physical placement with reasonable periods of placement available to Schultz upon notice. Schultz was ordered to pay $175 per month in child support. In June 2003, the parties stipulated to a modified placement schedule that granted Schultz alternating weeks with the child and included grandparent visitation and placement. The stipulation specified that it did not affect child support.

¶3    Schultz subsequently moved to revise child support. Based on the parties' shared placement schedule, the circuit court reduced Schultz's child support obligation to zero as of October 1, 2005. Schultz, however, remained responsible for any support arrears.

¶4    In April 2007, Gustafson sought a change in custody and physical placement, averring that Schultz was in jail and had been "in and out of jail for the last few years." Gustafson added that Schultz had not held a job in the past eight years and could not "physically/financially" take care of their daughter. Gustafson thus sought full custody, with placement for Schultz every other weekend upon his release from jail. The parties were ordered to undergo mediation and, in the interim, Gustafson sought "temporary full custody."

2

¶5    After an August 2, 2007 hearing at which both parties appeared in person, a court commissioner issued what was identified as a "Temporary Order from 8/2/07 Hearing," under which Gustafson was given primary physical placement with Schultz having placement every other weekend and every Tuesday and Thursday from 5:00 p.m. until 8:45 p.m.  Because Schultz was unemployed, the court commissioner imputed to him the minimum wage of $6.50 per hour or $1,127 per month of gross income.  Based on that imputed income, Schultz was ordered to pay $192 per month in child support.  Schultz was also ordered to pay $50 per month toward arrears.  Both the child support and arrears payments became effective as of August 1, 2007.

¶6    Attempts at mediation reached an impasse when Schultz failed to comply with the mediation order by not viewing a required video.   On February 29, 2008, the court commissioner issued a "Notice of Intent to Dismiss Custody/Placement Issue," in which Schultz was advised that, the issues he raised regarding custody and physical placement were dismissed based on his failure to attend an impasse review hearing.  That notice was returned as undeliverable because Schultz failed to keep the circuit court advised of his current address.

¶7    In May 2008, the Marathon County Child Support Agency ("the Agency") sought to enforce the August 2007 child support order by filing an order to show cause.  When Schultz failed to appear for the scheduled hearing, the circuit court issued a bench warrant for his arrest.  The warrant was later quashed and the court ultimately dismissed the contempt action in February 2009 because Schultz was scheduled to be incarcerated until June of that year.  However, the court acknowledged the existing order for $192 per month in current child support and $50 per month for arrears.

¶8 In March 2009, Schultz again petitioned to modify child support, arguing that his financial situation had drastically changed as a result of his incarceration. In June 2009, presumably following Schultz's release from incarceration, Gustafson moved to modify placement, asserting that overnight visits with Schultz should stop because of his "unstable lifestyle."

¶9 At a hearing on Schultz's petition, the circuit court informed the parties that because mediation had previously failed and the child's placement was at issue, it was required to appoint a guardian ad litem ("GAL") to represent the child's best interests. The court instructed the parties that unless they stipulated to the custody and placement issues, they were liable for the GAL fees. When Gustafson failed to make payment arrangements for her share of the GAL fees, she was warned that her claims regarding custody and placement would be dismissed if payment arrangements were not made within twenty days. From the record, it does not appear Gustafson made such arrangements. In August 2011, Schultz stipulated to increasing his child support from $192 to $251 per month. Schultz's July 2012 motion to reduce child support was denied.

¶10 Throughout this time, the Agency continued to enforce the child support orders via remedial contempt. Between July 2010 and March 2014, Schultz signed eleven orders acknowledging his obligation to pay child support, four of which specifically set forth the $192 per month due under the August 2007 temporary order.

¶11 The child turned eighteen in September 2016, thus ending Schultz's obligation to pay new child support. In August 2016, Schultz asked the circuit court to forgive all child support, arrears, and interest, arguing he had equal custody of the child since 2009 and the Agency had been improperly collecting

child support imposed by a "temporary order that was dismissed." It is unclear from the record before us whether there was a ruling on that request before Schultz moved the court for an order "reconciling the child support record," again claiming the August 2007 temporary order had been vacated or otherwise rendered invalid. Schultz's motions were denied, and this appeal follows.[1]

## DISCUSSION

¶12 As an initial matter, Schultz claims the underlying action was "procedurally flawed from the beginning," asserting that the record does not reflect that he was timely served with Gustafson's filings in the circuit court. Schultz, however, fails to adequately develop that argument. This court need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). In any event, as the Agency points out (and which Schultz does not dispute), Schultz did not raise that procedural challenge in the circuit court and, ultimately, he consented to the court's jurisdiction. *See Shadley v. Lloyds of London*, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838 (holding that issues not presented to the circuit court will not be considered for the first time on appeal). For those reasons, we reject that challenge by Schultz.

---

[1] The circuit court's written order states: "For the reasons set forth by the court on the record, the court denies all of [Schultz]'s motions." We note that the February 18, 2019 transcript of the court's oral ruling is not part of the record on appeal. As the appellant, Schultz was responsible for ensuring that all relevant transcripts are in the record. *See* WIS. STAT. RULE 809.11(4). However, the transcript is cited extensively in the Agency's brief and is included in the appendices to both parties' briefs. Because the contents of the transcript do not appear to be disputed, we accept the contents of the transcript as presented by the parties.

¶13     Schultz also claims the temporary order is invalid both because the court commissioner did not overtly find that there was a substantial change in circumstances and because there was no GAL appointed at the time the order was granted. Schultz again fails to dispute the Agency's claim that these arguments were not raised in the circuit court. Generally, we do not consider issues raised for the first time on appeal. *Id.* We therefore decline to consider those challenges to the temporary order.

¶14     Next, Schultz argues that the circuit court erred by denying his request to invalidate the August 2007 temporary order and any child support obligations flowing therefrom. Child support determinations rest within the circuit court's sound discretion and will not be reversed absent an erroneous exercise of that discretion. *See* ***Pergolski v. Pergolski***, 143 Wis. 2d 166, 173-74, 420 N.W.2d 414 (Ct. App. 1988). It is well established that "[w]hen reviewing a circuit court's exercise of discretion, we affirm if the circuit court applied the proper law to the relevant facts of record and used a rational process to arrive at a reasonable result." ***Ambrose v. Continental Ins. Co.***, 208 Wis. 2d 346, 350, 560 N.W.2d 309 (Ct. App. 1997).

¶15     Here, Schultz fails to acknowledge this court's standard of review or otherwise explain how he believes the circuit court erroneously exercised its discretion by denying his request for relief. Rather, Schultz asserts that the February 29, 2008 "Notice of Intent to Dismiss Custody/Placement Issue" should be interpreted as also voiding the terms of the temporary order. We are not persuaded. As the circuit court noted, the "Notice of Intent" informed Schultz in "plain language" that the issues of custody and physical placement raised by him were dismissed based on his failure to comply with the mediation order. The

notice did not address the child support obligations set forth in the temporary order.

¶16    Further, the circuit court properly recognized that Schultz had several opportunities to contest the temporary order and that he "was on notice as to the issues raised as to custody, placement, and child support." The court found:

> The record is clear after the August 2, 2007 hearing it took Mr. Schultz months to follow through on the most basic of requirements such as showing up to watch a[] [mediation] orientation video. Ultimately, he missed court and did not advise the clerk of his whereabouts.
>
> Because Mr. Schultz did not pursue in person, in writing, or through an attorney contesting the order set forth following the August 2, 2007 hearing, that temporary hearing order became in effect the final order of the case.

¶17    Moreover, Schultz's own actions demonstrate that he believed he was still obligated to pay child support. As noted above, he signed eleven orders acknowledging his obligation to pay child support, including orders that specifically set forth the $192 per month due under the August 2007 order. He also moved to reduce child support, thus acknowledging his existing obligation.

¶18    In denying Schultz's motion, the circuit court conducted an evidentiary hearing and received bench briefs from the parties before pronouncing a detailed oral ruling. The court properly exercised its discretion by giving reasonable effect to all of the orders as a whole, noting that the record created a consistent and unambiguous obligation on the part of Schultz to provide relatively modest support for his child. We therefore affirm.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.