**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 17, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP223**

**STATE OF WISCONSIN**

Cir. Ct. No. **2020ME39**

**IN COURT OF APPEALS**
**DISTRICT III**

---

IN THE MATTER OF THE MENTAL COMMITMENT OF S. L. V.:

SHAWANO COUNTY,

　　PETITIONER-RESPONDENT,

　V.

S. L. V.,

　　RESPONDENT-APPELLANT.

---

　　　　APPEAL from orders of the circuit court for Shawano County: WILLIAM F. KUSSEL, JR., Judge. *Reversed*.

　　¶1　STARK, P.J.[1] Susan[2] appeals from an order for involuntary commitment under WIS. STAT. § 51.20, as well as an order for involuntary

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

medication and treatment. As an initial matter, Susan contends that this appeal is not moot, even though the underlying orders have expired. She then contends that Shawano County violated her right to due process by failing to identify, either before or during the final commitment hearing, the statutory standard under which it sought to prove that she was dangerous. Susan also argues that the County failed to establish dangerousness by clear and convincing evidence under any of the five statutory standards, and that the circuit court failed to make specific factual findings with reference to the statutory basis for its determination of dangerousness, as required by *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277.

¶2 We conclude Susan's appeal is not moot because she remains subject to at least one collateral consequence of the commitment order—namely, a firearms ban. We further conclude that reversal is warranted because the circuit court failed to make the specific factual findings required by *D.J.W.* We therefore reverse both the commitment order and the associated order for involuntary medication and treatment.

## BACKGROUND

¶3 Susan gave birth to a child on June 11, 2020. On June 13, Susan was taken into custody pursuant to a statement of emergency detention and admitted to a psychiatric facility. Her child was removed from her care on the same day. The statement of emergency detention alleged that Susan was not taking her prescribed medications and had a "distorted view of reality." Following

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

a hearing on June 17, the Langlade County Circuit Court found probable cause to believe that Susan met the criteria for involuntary commitment under WIS. STAT. § 51.20. The court then transferred venue to Shawano County, where Susan lived.

¶4 Psychiatrists Marshall Bales and Sangita Patel were subsequently appointed to examine Susan. In his report of examination, Bales opined that Susan is mentally ill, with a diagnosis of schizoaffective disorder with active psychotic symptoms. He also opined that Susan is dangerous under the fourth and fifth standards set forth in WIS. STAT. § 51.20(1)(a)2.[3] Patel similarly opined in

---

[3] Under the fourth standard, an individual is dangerous if he or she

> [e]vidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

WIS. STAT. § 51.20(1)(a)2.d. Under the fifth standard, an individual is dangerous if, after the advantages, disadvantages, and alternatives to accepting a particular medication or treatment have been explained to him or her, the individual

> evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

(continued)

her report that Susan suffers from schizophrenia. She asserted that Susan is dangerous under the third and fourth standards in § 51.20(1)(a)2.[4]

¶5 A final commitment hearing took place on June 23, 2020. During the hearing, Bales testified that due to her mental illness, Susan is disorganized in her thinking, which is a "major impairment." He described Susan as agitated and delusional, with "some paranoia." Bales testified that Susan's mental illness is treatable, but she lacks insight into her condition and is therefore unable to understand and apply the advantages and disadvantages of receiving medication and treatment.

¶6 When asked on cross-examination to identify recent acts that showed Susan was dangerous under either the fourth or fifth standard, Bales responded that Susan "was talking delusionally" after giving birth; there was concern about the baby's safety, which led to the baby being removed from Susan's care; and "doctors intervened before … there was injury to the baby from some type of neglect or to [Susan] herself." Bales conceded, however, that Susan was physically healthy, that he was not aware of any recent actions Susan had taken that put either herself or the baby in danger, and that she had not been "imminently dangerous with suicidal or threatening behavior."

¶7 Patel testified that because of her mental illness, Susan was "significantly impaired," was not aware of what was going on around her, and was

---

Sec. 51.20(1)(a)2.e.

[4] Under the third standard, an individual is dangerous if he or she "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." WIS. STAT. § 51.20(1)(a)2.c.

delusional. As a result, Patel did not believe Susan could care for herself or her child. She opined that Susan's condition is treatable, but Susan has "[n]o insight into her illness" and is "not able to apply how the medications would benefit her because she doesn't believe she has a mental illness." On cross-examination, Patel conceded that she had no "specific examples" of recent acts or omissions showing that Susan was dangerous to herself or others. Instead, Patel testified that Susan's delusions, which were consistent with schizophrenia, "lead[] me to believe that she's incapable of caring [for] and she could harm the child."

¶8 The circuit court ultimately concluded, in an oral ruling, that Susan was mentally ill and a proper subject for treatment. The court also concluded that Susan was dangerous, stating:

> [S]o the question then comes about if—whether this person is—had some recent acts or admissions which would attempt to show that they are a danger to themselves or others.
>
> [Bales and Patel] were able to find through the impairment that the acts or admissions that [Susan] just recently has had delusions and does not understand reality, bizarre behavior.
>
> One of the admissions [is] that she stopped taking this medication that caused this problem, admission she's doing—that she's not taking care of herself and has come to a point where she's now delusional and bizarre behavior and not understanding reality and if the person cannot understand reality and see the reason to take medication they're a danger to themself or others, then they can't care for a child.
>
> They don't have an understanding of reality. The defendant themselves or the respondent themself is a danger to themself because of these admissions—of these admissions and that is delusional, bizarre behavior, the failure to get treatment for it and if she does not take the medication the witnesses took a position she'd be more dangerous to herself or others.

¶9    The circuit court therefore entered an order involuntarily committing Susan for a period of six months. The court also determined that Susan was not competent to refuse medication and, accordingly, entered an order for involuntary medication and treatment during the period of her commitment. Susan now appeals.

## DISCUSSION

### I. Mootness

¶10    In her brief-in-chief on appeal, Susan argues that even though the commitment and involuntary medication orders underlying this appeal have expired, the appeal is not moot, and we should therefore address the merits of her appellate arguments. Mootness presents a question of law that we review independently. *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509. An issue is moot when its resolution will have no practical effect on the underlying controversy. *Id.*, ¶11. We generally decline to address moot issues. *Id.*, ¶12.

¶11    An appeal from an expired commitment order is moot, unless the order results in collateral consequences that persist even after the order has expired. *See id.*, ¶¶14, 28 & n.11; *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶¶22-25, 390 Wis. 2d 50, 937 N.W.2d 901. Susan asserts that even though the relevant orders in this case have expired, she remains subject to various collateral consequences caused by those orders. In particular, Susan notes that the commitment order prohibits her from possessing firearms and expressly states that the firearms ban does not terminate upon expiration of the commitment order, but instead "shall remain in effect until lifted by the court." In *D.K.*, our supreme court concluded that an appeal from an expired initial commitment order was not

moot because "a decision in [the appellant's] favor would void the firearms ban and therefore have a 'practical effect'" on the appellant. ***D.K.***, 390 Wis. 2d 50, ¶25.

¶12     The County has not filed a brief in this appeal. As such, it has not responded to Susan's argument that her appeal is not moot because the firearms ban in the commitment order is a collateral consequence that persists even though the order has expired. "Arguments not rebutted on appeal are deemed conceded." ***Shadley v. Lloyds of London***, 2009 WI App 165, ¶26, 322 Wis. 2d 189, 776 N.W.2d 838. We therefore deem the County to have conceded that Susan's appeal is not moot, and we proceed to address the merits of her appellate arguments.

## II. Susan's appellate arguments

¶13     To involuntarily commit an individual under WIS. STAT. ch. 51, the petitioner has the burden to show by clear and convincing evidence that the individual is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to himself or herself or to others. WIS. STAT. § 51.20(1)(a)1.-2., (13)(e). In an initial commitment proceeding, the petitioner must establish dangerousness by showing that the subject individual is dangerous under at least one of the five standards set forth in § 51.20(1)(a)2.a.-e. *See **D.J.W.***, 391 Wis. 2d 231, ¶30; ***J.W.K.***, 386 Wis. 2d 672, ¶17.

¶14     As noted above, Susan raises three arguments on appeal, each of which pertains to the issue of dangerousness. First, Susan argues the County violated her right to due process by failing to identify, either before or during the final commitment hearing, under which of the five standards in WIS. STAT. § 51.20(1)(a)2. it sought to establish that she was dangerous. Second, Susan argues that the County failed to establish dangerousness by clear and convincing

evidence under any of the five statutory standards.  Finally, Susan contends that reversal is required because the circuit court failed to make specific factual findings with reference to the statutory basis for its determination of dangerousness, as required by *D.J.W.*

¶15     We need not address Susan's first two arguments because we agree with her third, and narrowest, argument that reversal is warranted because the circuit court failed to comply with its obligations under *D.J.W.*  *See Miesen v. DOT*, 226 Wis. 2d 298, 309, 594 N.W.2d 821 (Ct. App. 1999) (court of appeals "should decide cases on the narrowest possible grounds"); *Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).  In *D.J.W.*, our supreme court held that, "going forward[,] circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3.  The court explained that this requirement serves two purposes.  *Id.*, ¶42.  First, it "provides clarity and extra protection to patients regarding the underlying basis for a recommitment" by "ensur[ing] that recommitments are based on sufficient evidence."  *Id.*, ¶¶42-43.  Second, it facilitates meaningful appellate review of recommitment orders by clarifying the basis for recommitment so that the appellate court does not have to engage in "guesswork" and by providing a "more substantial record" for the appellate court's consideration.  *Id.*, ¶¶44-45.

¶16     *D.J.W.* was issued on April 24, 2020.  The final commitment hearing in this case took place on June 23, 2020—approximately two months later.  Although *D.J.W.* addressed a recommitment order, rather than an initial commitment order like the one at issue in this case, we have recently stated that

"we see no reason why the [***D.J.W.***] court's mandate [regarding specific factual findings with reference to the relevant subdivision paragraph of WIS. STAT. § 51.20(1)(a)2.] would not apply for initial commitments as well." ***Winnebago Cnty. v. A.A.L.***, No. 2020AP1511, unpublished slip op. ¶17 n.8 (WI App Mar. 24, 2021).[5] "The 'purpose of making specific factual findings' is equally applicable to initial commitments." ***Id.*** (citing ***D.J.W.***, 391 Wis. 2d 231, ¶¶42-44).

¶17  The circuit court in this case did not make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. under which it found Susan to be dangerous, as required by ***D.J.W.***  Instead, the court merely found that: (1) Susan "recently has had delusions and does not understand reality, bizarre behavior"; (2) Susan had stopped taking her medication, which resulted in her "not taking care of herself" and exhibiting "delusional and bizarre behavior and not understanding reality"; and (3) if a person cannot understand reality and "see the reason to take medication," then that person is "a danger to themselves or others" and "can't care for a child."  The court then concluded that Susan was dangerous because she did not have an understanding of reality, because of her "delusional, bizarre behavior" and her "failure to get treatment for it," and because the experts had testified that "if she does not take the medication … she'd be more dangerous to herself or others."

¶18  As the above summary shows, the circuit court did not specify under which subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. it found Susan to be dangerous.  Moreover, the court did not make specific factual findings

---

[5] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

corresponding to the elements of any of the five statutory standards of dangerousness set forth in § 51.20(1)(a)2. On this record, we agree with Susan that the court failed to comply with its obligations under **D.J.W.** In addition, we again observe that the County has not filed a brief in this appeal. As such, the County has not responded to Susan's argument that the court was required, and failed, to comply with **D.J.W.**, and we therefore deem that point conceded. *See* **Shadley**, 322 Wis. 2d 189, ¶26.

¶19    We further agree with Susan that outright reversal of the commitment and involuntary medication orders is the appropriate remedy for the circuit court's error, rather than a remand for the court to comply with **D.J.W.** WISCONSIN STAT. § 51.20(7)(c) sets forth time limits for a circuit court to hold a final hearing on a petition for involuntary commitment. A circuit court generally loses competency to enter an involuntary commitment order if the final hearing is not held within the statutory time limits.[6]  *See* **State ex rel. Lockman v. Gerhardstein**, 107 Wis. 2d 325, 328-39, 320 N.W.2d 27 (Ct. App. 1982); *see also* **Jefferson Cnty. v. S.M.S.**, No. 2020AP814, unpublished slip op. ¶12 (WI App Mar. 11, 2021).

¶20    Here, the circuit court held a final hearing on the County's petition to involuntarily commit Susan within the statutory time limits, but it failed to comply with its obligations under **D.J.W.** during that hearing, and it therefore failed to enter a valid commitment order. At this point, the statutory time limits for holding a final commitment hearing have long since passed, and, as a result,

---

[6] An exception to this rule exists if the delay is caused by conduct or manipulation perpetuated by the subject individual. *See* **Milwaukee Cnty. v. Edward S.**, 2001 WI App 169, ¶9, 247 Wis. 2d 87, 633 N.W.2d 241. That exception, however, is not applicable in this case.

the court now lacks competency to conduct further proceedings on the County's petition. A remand for the court to comply with its obligations under ***D.J.W.*** would therefore serve no purpose, as the court now lacks competency to do so. In addition, we again note that by failing to file a brief in this appeal, the County has conceded that outright reversal is the appropriate remedy for the court's failure to comply with ***D.J.W.*** *See **Shadley***, 322 Wis. 2d 189, ¶26.

¶21 Accordingly, we reverse outright the circuit court's order involuntarily committing Susan. Because we reverse the involuntary commitment order, reversal of the involuntary medication and treatment order is also warranted, as an order for involuntary medication and treatment can only exist during the term of a valid commitment. *See* WIS. STAT. § 51.61(1)(g)3.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.