CAPITOL LUMBER COMPANY, Appellant, v. DEPARTMENT OF TAXATION, Respondent.

*May 3—June 5, 1962.*

108

For the appellant there were briefs by *Quarles, Herriott & Clemons,* attorneys, and *Richard R. Teschner* and *Dale L. Sorden* of counsel, all of Milwaukee, and oral argument by *Mr. Sorden.*

For the respondent the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

GORDON, J. The appellant contends that the evidence establishes that the lease in question was a binding and valid obligation and that its terms were fair and reasonable when entered into, and that it was one which might have been entered into between strangers dealing at arm's length. The appellant also argues that the crucial issue is the reasonableness of the lease and not the reasonableness of the amount of rent the lease actually produced during 1951 and 1952. The appellant does not contend that the payments for each of the years would have been fair rents under a *fixed*-rental lease; but if the *percentage* lease was fair when entered into, then the fact that the lease happens to produce more rent than would be allowable under a fixed-rental lease is not controlling for tax purposes.

The respondent contends that the payments as rent for the years in question were excessive and did not constitute ordinary and necessary business expenses under sec. 71.04 (2), Stats.

While portions of the rent were disallowed by both the Department of Taxation and the board of tax appeals, no finding was made that the terms of the lease were unreasonable at the time that the contract was entered into. The circuit court in its memorandum opinion did, however, comment on the lease. Said the learned trial judge:

"Indeed there was a conflict in the testimony from which the board could reasonably infer that 'percentage of gross sales leases' were not in use for businesses such as Capitol Lumber's and that it should disregard such lease because no yardstick was available to it by which to measure whether it was fair or unfair, reasonable or unreasonable, when entered into. The board was certainly entitled to reject the lease and it obviously did so."

We are of the opinion that the board of tax appeals was not entitled to reject the lease because our review of the record persuades us that a finding that the lease was unreasonable when entered into would not be supported by substantial evidence. Sec. 227.20 (1) (d), Stats. For a definition of "substantial evidence" see *Copland v. Department of Taxation* (1962), 16 Wis. (2d) 543, 114 N. W. (2d) 858, and *Green Bay & W. R. Co. v. Public Service Comm.* (1955), 269 Wis. 178, 187, 68 N. W. (2d) 828.

It is understandable that taxing authorities will be suspicious of transactions between related or identical parties. See, for example, *A. A. Skemp v. Department of Taxation* (1948), 3 WBTA 413. When this suspicion is buttressed with substantial evidence, disallowance of tax benefits from contrived arrangements may be warranted. See *Limericks, Inc., v. Commissioner* (5th Cir. 1948), 165 Fed. (2d) 483.

The mere fact that the lessor and the lessee were related parties does not of itself render their dealings unfair for tax purposes. *Brown Printing Co. v. Commissioner* (5th Cir. 1958), 255 Fed. (2d) 436. See also 4 Mertens, Law of Federal Income Taxation (Zimet & Diamond rev.), ch. 25– p. 322 *et seq.*, sec. 25.110. For tax purposes, in determining the reasonableness of a contract between related parties, the test is whether the same contract would have been entered into by strangers. See *Kansas City Star Co. v. Department of Taxation* (1959), 8 Wis. (2d) 441, 451, 99 N. W. (2d) 718.

The Department of Taxation argues that the assessment should be sustained because the agreement entered into between the related parties could have been changed at will. We do not doubt that the parties would have had the power to have changed this agreement at their pleasure, but it does not follow that a subsequent rearrangement of obligations would be recognized for tax purposes. In *Mel Dar Corp. v.*

*Commissioner* (1960), 19 TCM 290, 300 (CCH), it was held that a reduction in oil royalties between related parties for a nonbusiness purpose was not to be recognized for tax purposes. See also *Ray's Clothes, Inc., v. Commissioner* (1954), 22 TC 1332. There is no question but that the lease in question was a valid agreement, regularly entered into and formally applied by the parties thereto.

The percentage lease is in common use; it is a "recognized and accepted practice." *West Virginia Tractor & Equipment Co. v. Commissioner* (1953), 12 TCM 1476, 1482 (CCH). See also McMichael and O'Keefe, Leases—Percentage, Short and Long Term (5th ed.), ch. 6, pp. 32–39. The use of a percentage lease in the retail lumber-supply business cannot be rejected without evidence as to why such leases are inapplicable to this type of business.

There can be little doubt that the rentals actually paid proved to be excessive. Had these rentals been set as fixed amounts in the original lease, they would not have constituted ordinary and necessary expenses under sec. 71.04 (2), Stats. The crucial question, however, is not whether they ultimately turned out to be excessive, but whether at the time the lease was entered into it was a contract which contemplated reasonable or unreasonable rentals.

The lease provided for a minimum rental of $10,200 annually, plus one and one-half percent of the gross sales. On its face this does not appear to be an extraordinary agreement. Indeed, the minimum rental of $10,200 is $2,900 less than the fair rental subsequently found by the board of tax appeals. The fact that the minimum rental called for in the lease was less than the fair rental value of the premises as found by the board demonstrates that the lessors took a risk that they might receive less than the fair rental value. The operation of a percentage lease is geared to the productivity of a business. If the minimum-rental provision is below the fair

rental value of the premises, which it was in this case, then the lessor takes a chance that in some years he will obtain less than the fair rental value. The lessor gambles that in the lessee's productive years he will obtain increased rental payments.

The record tends to establish its fairness at the time the lease was entered into and is devoid of proof to the contrary. In *State v. Public Service Comm.* (1962), 16 Wis. (2d) 231, 238, 114 N. W. (2d) 454, we stated:

"A trier of the fact is required to accept positive uncontradicted testimony as to the existence of a fact in absence of something in the case which discredits the same or renders it against reasonable probabilities."

The testimony of several experts appears in the record. Mr. John R. Bach, testifying on behalf of the appellant, stated:

"After analyzing the property, its location, the type of business conducted therein, the apparent facilities that were available, it is my opinion that the lease under Exhibit D was a fair and equitable arrangement between the parties and certainly would be comparable to an arrangement which might have been made between strangers, or an arrangement which would have been made at arm's length."

Mr. Peter A. Berres, also testifying on behalf of the appellant, stated:

"My opinion is that the rentals provided for in this lease, with this one and one-half percent on gross sales, could have been arrived at with anyone else that the owners of this real estate might have negotiated with."

Testifying on behalf of the Department of Taxation, Mr. Herman W. Pfeil stated:

". . . I would say from the testimony I have heard, that percentage leases in my opinion and my experience have not been applicable to this kind of business. I know of none."

Another witness who testified on behalf of the Department of Taxation, Mr. Alfred Howe, merely adopted Mr. Pfeil's testimony.

Without the benefit of hindsight, there has been no proof presented that the lease was unreasonable at the time that the legal relationship of lessor and lessee was created. The parties to the lease were not clairvoyant; what the future would bring was speculative at the time the agreement was made. The taxpayer would have suffered had it made a bad bargain, and we have been shown no reason why it should not enjoy the benefits of a good bargain. The lease was not tainted with transparent partiality or iniquity at the time of its creation.

We are satisfied that the record does not contain substantial evidence to sustain the assessment of the additional tax. Pursuant to sec. 227.20 (1) (d), Stats., we conclude that the decision must be reversed. *Bell v. Personnel Board* (1951), 259 Wis. 602, 49 N. W. (2d) 889.

*By the Court.*—Judgment reversed. Order to be entered abating the additional assessments.