COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1982**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV2099

IN COURT OF APPEALS
DISTRICT IV

MPI WRIGHT LLC,

    PLAINTIFF-APPELLANT,

  V.

GOODIN COMPANY,

    DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT,

  V.

OAKBROOK CORPORATION,

    THIRD-PARTY DEFENDANT-RESPONDENT.

        APPEAL from an order of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed and cause remanded for further proceedings*.

        Before Blanchard, Graham, and Taylor, JJ.

¶1      TAYLOR, J. MPI Wright LLC ("MPI") and Goodin Company executed a lease ("the Lease") in which Goodin agreed to lease a commercial property from MPI for a term of five years and two months. MPI sued Goodin for breach of contract because Goodin did not take possession of the property or make any rent payments. Goodin responded that the Lease is invalid, in part, because it violates statute of frauds requirements set forth in WIS. STAT. §§ 704.03(1) and 706.02(1) (2021-22).[1] The circuit court granted summary judgment in favor of Goodin based on the conclusion that the Lease fails to set forth the "amount of rent" owed or to provide sufficient information to determine the "amount of rent" as required by § 704.03(1). After the parties submitted additional briefing addressing whether the Lease may be enforced in equity pursuant to WIS. STAT. § 706.04, the court concluded that equitable relief is not available under that statute as a matter of law.

¶2      On appeal, MPI argues that the circuit court erroneously granted summary judgment in favor of Goodin because the Lease satisfies the pertinent statute of frauds requirements or, in the alternative, because the Lease may be reformed and enforced in equity. For its part, Goodin argues that the court correctly determined that the Lease violates the "amount of rent" requirement in WIS. STAT. § 704.03(1), but that the court erred in concluding that the Lease satisfies two other statute of frauds requirements.

¶3      We agree with the circuit court's determination that the Lease fails to satisfy the "amount of rent" requirement in WIS. STAT. § 704.03(1) and its

---

[1] All references are to the 2021-22 version of the Wisconsin Statutes unless otherwise noted.

determination that the Lease cannot be reformed in equity pursuant to WIS. STAT. § 706.04. We also affirm the court's conclusion that the Lease satisfies the two other statute of frauds requirements identified by Goodin. However, the court did not address MPI's argument that the Lease can be enforced pursuant to the common law doctrine of contract reformation. We therefore affirm the court's decision with respect to the issues it did address, and we remand for further proceedings to allow the circuit court to address the issue of common law contract reformation consistent with this opinion.

## BACKGROUND

¶4      The parties entered into a stipulation as to the following material facts in the circuit court, which we now summarize. The following background also includes some additional undisputed facts.

¶5      In April 2020, Goodin retained Bryant Meyer, a real estate broker working for Oakbrook Corporation, to act as Goodin's agent in locating a commercial property for lease and negotiating the contract terms of a lease. Meyer sent Goodin a multi-page flier ("the Listing") for the purchase or lease of a 19,800-square-foot warehouse building set on 2.2 acres of land located at 1438-1458 Wright Street in Madison ("the Property"). The "Highlights" section of the

Listing indicated that the Property was subject to a "Ground Lease" but did not provide any detail about the Ground Lease.[2]

¶6　　On April 28, 2020, Meyer contacted MPI on behalf of Goodin to inquire about Goodin potentially leasing the warehouse. Meyer and MPI discussed a potential transaction in which MPI would "purchase" the warehouse, which MPI did not yet own, and lease it to Goodin.[3] The following day, MPI sent documents to Meyer indicating that the Dane County Regional Airport ("Dane County") is "the landlord" under the Ground Lease and detailing the amounts owed to Dane County pursuant to the Ground Lease.[4] However, Meyer never forwarded this information about the Ground Lease to Goodin.

¶7　　On May 13, 2020, MPI, Goodin, and Meyer agreed to the terms of a non-binding Request for Proposal ("RFP"). In relevant part, the RFP stated that Goodin was interested in leasing from MPI the 19,800-square-foot warehouse for five years and two months at a "base rental rate" of $5.25 per square foot. The

---

[2] There is no dispute that a ground lease is a type of commercial lease under which the property owner leases the land to a tenant, and the tenant is then responsible for developing or improving the land, including erecting buildings on it. *See* STUART M. SAFT, *Commercial Real Estate Transactions* § 8.1 (3d ed. 2024). Under a typical ground lease, the tenant owns whatever buildings that it develops as well as other improvements that the tenant makes to the land. *Id.* The tenant typically has the authority to sublease the property to a third party or to assign its leasehold interest to another tenant. *Id.*, §§ 8.1, 8.13.

[3] We note that the parties' stipulation of facts filed with the circuit court states that MPI "purchase[d]" the warehouse from the previous Ground Lease tenants and later "closed" on its purchase. We infer from these stipulated facts that MPI purchased the warehouse from an unnamed third party who was the tenant under the Ground Lease and that the Ground Lease was reassigned to MPI.

[4] The Ground Lease itself is not in the record. However, the record contains a "Ground Lease Abstract," which states that Dane County is the landlord of the 96,264 square feet of land on which the warehouse sits and is the entity to whom any tenant has to make monthly and annual payments under the Ground Lease.

RFP also set forth Goodin's obligation to pay "Additional Expenses," including all expenses typically associated with a "triple net lease," such as utility and maintenance costs.[5]   However, the RFP did not reference the Ground Lease, the amount that the Ground Lease tenant would owe to Dane County pursuant to the Ground Lease, or which party would be responsible for making the payments under the Ground Lease after Goodin and MPI entered into the contemplated lease agreement.

¶8      Over the course of the next two months, MPI and Goodin negotiated the terms of a lease.  At one point, MPI sent Goodin a revised draft lease that added language that would have required Goodin to pay a "management fee" as well as "all other payments due under the Ground Lease with Dane County." Goodin objected to the management fee, which MPI agreed to remove.  But, in its response, Goodin did not mention the Ground Lease.

¶9      On July 9, 2020, MPI and Goodin signed the Lease.  The Lease sets forth the following provisions that are pertinent to this appeal:  Goodin's obligation to pay MPI a "Base Rent" of $5.50 per square foot for the initial year, which the Lease characterized as the "rent for the Property"; an address and parcel number of the "Property" that Goodin was leasing; and Goodin's obligation to pay "Additional Rent," which included "Operating Expenses" and other costs and expenses explicitly set forth in the Lease, such as real estate taxes and assessments.  As part of its obligation to pay "Additional Rent," the Lease

---

[5] The parties do not dispute that a triple net lease is a lease under which "the tenant is typically responsible for expenses such as maintenance, insurance, real estate taxes, and utilities, in addition to its lease payments."  *See* ***Brenner v. Amerisure Mut. Ins. Co.***, 2017 WI 38, ¶2 n.1, 374 Wis. 2d 578, 893 N.W.2d 193.

explicitly obligates Goodin to pay the costs of the Ground Lease with Dane County. Central to the dispute here, the Lease does not set forth the square footage to be used to calculate the Base Rent of $5.50 per square foot.

¶10 Although the Lease designates September 1, 2020, as the tentative start date for Goodin's five-year tenancy, the Lease provides that this start date could be modified if the "[c]losing" of MPI's purchase of the warehouse was delayed. In anticipation of this possible delay, the Lease states that a "Commencement Certificate," attached to the Lease and incorporated therein as "Exhibit B," would be filled in with the specific commencement date of the Lease as events unfolded. The Lease also stated that the terms of the "Base Rent … will be further set forth and confirmed in the Commencement Certificate." More specifically, the Commencement Certificate contained blank spaces for additional terms that would be set forth once MPI closed on the warehouse, including: the commencement date of the Lease; the date on which Goodin is obligated to pay "Additional Rent," which, under the terms of the Lease, included the Ground Lease payments; and the date and the amount due for the first installment of Base Rent.[6]

¶11 On August 7, 2020, MPI closed on its purchase of the warehouse, and the Ground Lease was reassigned to MPI as the tenant. On August 31, MPI provided Goodin with a completed Commencement Certificate. The completed Commencement Certificate set forth: the dates for the commencement, expiration,

---

[6] We note that neither the executed Lease nor the attached incomplete Commencement Certificate appear to specify the period for paying Base Rent, other than the provision stating that the first installment of Base Rent is due two months after the Lease commences. Because Goodin does not challenge the enforceability of the Lease on this basis, we do not address it further.

and renewal of the Lease; the amount of payment and payment schedule on annual and monthly terms for "Base Rent"; and the amount of payment and payment schedule for the "Additional Rent" assigned to Goodin under the Lease that included a nearly $22,000 annual payment for the Ground Lease.

¶12     Goodin refused to sign the completed Commencement Certificate, take possession of the Property, or make any payments to MPI.

¶13     MPI sued Goodin for breach of contract and claimed over $1 million in damages.  Goodin filed a third-party complaint against Oakbrook Corporation claiming negligence in connection with the lease negotiations conducted by Meyer.  After some discovery and several attempts at mediation, the circuit court stayed discovery on the issue of damages and ordered summary judgment briefing on the issue of liability.

¶14     MPI moved for summary judgment, arguing that the Lease is a valid and enforceable contract and that Goodin breached its contractual obligations by failing to take possession of the Property or to pay any rent.  Goodin also moved for summary judgment, arguing in relevant part that the Lease is invalid and unenforceable under WIS. STAT. § 704.03(1)—the statute of frauds governing leases for a term longer than one year—and WIS. STAT. § 706.02(1)—the statute of frauds governing most land transactions.  Specifically, Goodin argued that the Lease does not satisfy these statutes in three ways:  (1) it does not set forth the "amount of rent" as required by § 704.03(1); (2) it does not provide a "reasonably definite description of the premises" as required by § 704.03(1); and (3) it fails to "itemize or monetize" the "essential terms" of the Lease as required by § 706.02(1).

¶15     The circuit court granted summary judgment in favor of Goodin, concluding that the Lease is invalid because it does not set forth the "amount of rent" as required by WIS. STAT. § 704.03(1).  However, the court disagreed with Goodin's other two arguments, concluding that the Lease contains a reasonably definite description of the premises as required by § 704.03(1) and sufficiently identifies Goodin's obligations under the Lease, aside from the amount of Base Rent owed.

¶16     After concluding that the Lease fails to satisfy the "amount of rent" requirement in WIS. STAT. § 704.03(1), the circuit court requested additional briefing regarding whether the Lease could be equitably reformed and enforced pursuant to WIS. STAT. § 706.04.  MPI argued that the equitable remedies set forth in § 706.04—which are available for land transactions that violate the requirements set forth in WIS. STAT. § 706.02—are also available for leases that fail to satisfy the requirements set forth in § 704.03(1).  In the alternative, MPI argued that the court has the authority to reform the Lease so that it is enforceable by applying the common law doctrine of contract reformation.  After the parties completed briefing on this issue, Goodin filed a letter with the court urging the court to not consider MPI's common law contract reformation argument because MPI raised that argument for the first time in its reply brief to the circuit court.  In a written decision, the court denied MPI's request for equitable relief pursuant to § 706.04, but it did not address MPI's common law contract reformation argument.  MPI appeals.[7]

---

[7] Oakbrook Corporation adopts Goodin's arguments on appeal.

**DISCUSSION**

¶17    On appeal, the parties' primary dispute centers on whether the Lease satisfies the pertinent requirements of WIS. STAT. §§ 704.03(1) and 706.02(1). MPI argues that the circuit court erred in granting summary judgment in Goodin's favor based on the court's determination that the Lease fails to set forth the "amount of rent" as required by § 704.03(1). In the alternative, MPI argues that the Lease can be enforced in equity pursuant to WIS. STAT. § 706.04 or under the common law doctrine of contract reformation. Goodin responds that the court correctly determined that the Lease fails to set forth the "amount of rent" but argues that the court erred in determining that the Lease contains a "reasonably definite description" of the Property as required by § 704.03(1) and identifies all other "essential terms," which Goodin contends is required under § 706.02(1).

¶18    For reasons explained below, we conclude that the Lease does not satisfy the statute of frauds because it does not set forth the "amount of rent" as required by WIS. STAT. § 704.03(1). Separately, we conclude that the Lease contains a "reasonably definite description" of the Property as required by this statute and identifies the pertinent "material term[s]" required by WIS. STAT. § 706.02(1). We also conclude that the equitable remedies set forth under WIS. STAT. § 706.04 are not available to enforce the Lease in equity. However, we remand for the circuit court to address for the first time whether the common law

9

doctrine of contract reformation is applicable and, if so, whether that doctrine should be applied to the Lease.[8]

## I. Standard of Review

¶19 Whether the circuit court properly granted summary judgment is a question of law that we review independently. *303, LLC v. Born*, 2012 WI App 115, ¶10, 344 Wis. 2d 364, 823 N.W.2d 269. Summary judgment is appropriate when "the pleadings, admissions, affidavits, and other court filings show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

¶20 Our determination of whether summary judgment is appropriate here also requires us to interpret and apply the language of the applicable statutes of frauds—namely, WIS. STAT. §§ 704.03(1) and 706.02(1)—and the statute governing equitable remedies for land transactions—namely, WIS. STAT. § 706.04. Interpreting and applying the language of a statute presents a question of law that we review independently. *U.S. Bank Nat'l Ass'n v. Stehno*, 2017 WI App 57, ¶6, 378 Wis. 2d 179, 902 N.W.2d 270.

---

[8] MPI appears to raise a separate argument on appeal that the Lease is an enforceable contract and that Goodin breached its contractual obligations under the Lease. In its response brief, Goodin interprets this argument from MPI as "inextricably intertwined" with MPI's statute of frauds argument and describes the two arguments as involving "the same exact inquiry." In its reply brief, MPI does not respond to Goodin's characterization of its arguments on appeal, nor does it raise any argument regarding Goodin's breach of its contractual obligations outside of the statute of frauds context. Therefore, we conclude that MPI has conceded that MPI is not pursuing in this appeal any contract theory that is not completely subsumed by the issues we address in the text. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to respond to an argument in a reply brief may be deemed a concession).

¶21 When reviewing whether the Lease satisfies the requirements of WIS. STAT. §§ 704.03(1) and 706.02(1), we must also interpret the language of the Lease and determine whether the terms of the Lease set forth the information required by these statutes. *See Trimble v. Wisconsin Builders, Inc.*, 72 Wis. 2d 435, 442, 241 N.W.2d 409 (1976). This inquiry requires us to determine whether the information required by §§ 704.03(1) and 706.02(1) is sufficiently set forth in the language of the Lease. *See id.* ("[I]t is not the intent of the parties which governs in respect to satisfying the formal requisites of the Statute of Frauds. A reasonable certitude in respect to the subject matter of the agreement must be expressed in the contract itself."). Put another way, the test of whether a contract complies with the pertinent requirements of the statute of frauds "is not what the parties to the contract know but what they put in the contract." *Stuesser v. Ebel*, 19 Wis. 2d 591, 596, 120 N.W.2d 679 (1963). Accordingly, our review requires us to examine the written document in which the terms of the Lease are memorialized. *Prezioso v. Aerts*, 2014 WI App 126, ¶19, 358 Wis. 2d 714, 858 N.W.2d 386. In deciding whether a document conforms to the statute of frauds, we may consider the language of the entire document. *Wadsworth v. Moe*, 53 Wis. 2d 620, 624, 193 N.W.2d 645 (1972). The interpretation of such documentary evidence is a question of law that we review independently. *Prezioso*, 358 Wis. 2d 714, ¶19 ("When the evidence is documentary, an appellate court may interpret such evidence for itself and is as equally competent as the trial court to do so.").

11

## II. Statute of Frauds For Leases Exceeding a One-Year Term

### A. Statute of Frauds Principles

¶22    Generally, the purpose of the statute of frauds is to ensure "reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made." *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 734-35, 433 N.W.2d 654 (Ct. App. 1988), *aff'd as modified and remanded*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 131 cmt. c (AM. L. INST. 1981)).    To achieve this purpose, the statute of frauds "requires that if one wishes to enforce a [contract affecting real estate], the contract must be in writing, set forth all the essential terms with particularity, and be signed by all parties to the transaction." *Prezioso*, 358 Wis. 2d 714, ¶22 (citation omitted).    Therefore, in determining whether the statute of frauds is satisfied, our inquiry is not to determine whether there was in fact fraud or perjury, but to determine whether the pertinent terms are sufficiently set forth in writing as required by the relevant statute of frauds. *See id.*

¶23    A lease with a term exceeding one year, such as the Lease at issue here, must satisfy the statute of frauds requirements set forth in both WIS. STAT. §§ 704.03(1) and 706.02(1). *Halverson v. River Falls Youth Hockey Ass'n*, 226 Wis. 2d 105, 110, 593 N.W.2d 895 (Ct. App. 1999).    The latter statute pertains to all land transactions governed by WIS. STAT. ch. 706 and requires that these transactions be set forth in a "conveyance" that satisfies the requirements in

12

§ 706.02(1).[9]  Additionally, as pertinent to this appeal, § 704.03(1) requires that a lease exceeding a one-year term "set[] forth the amount of rent or other consideration" and "a reasonably definite description of the premises."[10]  If a lease

---

[9] A "conveyance" is defined as a "written instrument" that satisfies the requirements of WIS. STAT. § 706.02.  WIS. STAT. § 706.01(4).  In the present case, there is no dispute that the documents constituting the "conveyance" for the purposes of § 706.02 are the Lease and the incomplete Commencement Certificate that is attached to the Lease as "Exhibit B."

As pertinent to this appeal, WIS. STAT. § 706.02(1) provides that a conveyance must satisfy the following requirements:

> (a) Identifies the parties; and
>
> (b) Identifies the land; and
>
> (c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and
>
> ….
>
> (e) Is signed by or on behalf of all parties, if a lease or contract to convey; and
>
> ….
>
> (g) Is delivered.

[10] WISCONSIN STAT. § 704.03(1) provides, in full, with emphasis now added on the key phrases:

> Notwithstanding [WIS. STAT. §] 704.02, a lease for more than a year, or a contract to make such a lease, is not enforceable unless it meets the requirements of [WIS. STAT. §] 706.02 and in addition sets forth *the amount of rent or other consideration*, the time of commencement and expiration of the lease, and a *reasonably definite description of the premises*, or unless a writing, including by means of electronic mail or facsimile transmission, signed by the landlord and the tenant sets forth the amount of rent or other consideration, the duration of the lease, and a reasonably definite description of the premises and the commencement date is established by entry of the tenant into possession under the writing.  [WISCONSIN STAT. §§] 704.05 and 704.07 govern as to matters within the scope of such sections and not provided for in such written lease or contract.

13

for a term longer than one year does not satisfy the requirements of §§ 704.03(1) and 706.02(1), the lease is invalid and unenforceable. *See Zapuchlak v. Hucal*, 82 Wis. 2d 184, 191, 262 N.W.2d 514 (1978).

## B. Amount of Rent

¶24 The first issue we address is whether the Lease satisfies the "amount of rent" requirement in WIS. STAT. § 704.03(1). As just quoted, this statutory provision states in pertinent part that a lease for a term exceeding one year is not enforceable unless it "sets forth the amount of rent or other consideration." For the following reasons, we conclude that the Lease does not satisfy this requirement because it fails to set forth the amount of "Base Rent" owed under the Lease.[11]

¶25 The phrase "amount of rent" is not defined in WIS. STAT. ch. 704, and our research does not reveal any case law interpreting the meaning of the phrase "amount of rent" for the purposes of WIS. STAT. § 704.03(1). "When a statutory term is undefined, its ordinary and accepted meaning can be established by reference to a recognized dictionary." *New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶41, 370 Wis. 2d 75, 881 N.W.2d 339. Here, one relevant dictionary definition of the word "amount" is "the total number or

---

[11] We note that the parties' dispute regarding whether the Lease sets forth the "amount of rent" as required by WIS. STAT. § 704.03(1) centers solely on whether the "Base Rent" provisions of the Lease satisfy the "amount of rent" requirement and not whether the "Additional Rent" provisions of the Lease satisfy the "amount of rent" requirement. As noted, the Lease states that "[t]enant shall pay to Landlord … rent for the Property consisting of the Base Rent." We therefore follow the parties' lead and confine our analysis in this section to whether the Lease's "Base Rent" provisions sufficiently set forth the "amount of rent" as required under § 704.03(1).

In a similar vein, we note that there is no dispute in this appeal about any "other consideration," as distinct from the "amount of rent" under WIS. STAT. § 704.03(1). Again, the only dispute on the topic of the "amount of rent" is whether the "Base Rent" was adequately described.

quantity." *Amount*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/amount (last accessed Jan. 29, 2025). One relevant dictionary definition of "rent" is "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property." *Rent*, BLACK'S LAW DICTIONARY (12th ed. 2024). Consistent with what we construe to be apt definitions for this context, we conclude that the phrase "amount of rent" under WIS. STAT. § 704.03(1) means the total number of dollars to be paid in a period for the possession and use of the property.

¶26 We next examine whether the language of the Lease itself satisfies the "amount of rent" requirement.

¶27 The Lease describes Goodin's obligations to pay "Base Rent" as follows:

> Base Rent (Initial Term): $5.50 per square foot for the initial year, which will increase by two and half percent (2.5%) during the [I]nitial Term. Base Rent will be further set forth and confirmed in the Commencement Certificate, which is attached hereto as Exhibit B and is incorporated herein as though fully set forth.
>
> Base Rent (Renewal Term): For each year in the Renewal Term, the Base Rent shall increase by two percent (2%) from the prior year's Base Rent.

A separate section of the Lease provides that "[Goodin] shall pay to [MPI] … rent for the Property consisting of the Base Rent," which "shall be set forth on the Commencement Certificate." For its part, the Commencement Certificate attached to and incorporated into the Lease as Exhibit B is incomplete and contains only a blank space at the spot where the amount of Base Rent would be written, reading as follows: "The amount due for the first installment of Base Rent, as pro-rated,

15

is $\_\_\_\_\_."[12] Neither the Lease nor the incomplete Commencement Certificate set forth the square footage to be used to calculate the Base Rent.

¶28 MPI argues that the language of the Lease itself satisfies the "amount of rent" requirement in WIS. STAT. § 704.03(1) by expressing the "Base Rent" as $5.50 per square foot, even though the square footage is not stated. If it were otherwise, MPI contends, "many types of valid rental agreements would be rendered void," including types of commercial leases that our supreme court has recognized have been in common use. *See **Capitol Lumber Co. v. Wisconsin Dept. of Taxation***, 17 Wis. 2d 105, 113, 115 N.W.2d 606 (1962) (noting that it is common for leases to define rent as a percentage of the lessee's gross sales). Although ***Capitol Lumber*** does not concern whether a lease satisfies the statute of frauds, MPI may have intended to cite this case to support the undisputed proposition that a lease that must set forth the "amount of rent or other consideration" under § 704.03(1) may include a variety of payment terms or methods of nonmonetary consideration. In any case, for the following reasons, we are not persuaded that the language of the Lease alone satisfies the "amount of rent" requirement in § 704.03(1).

¶29 Here, we cannot determine the "amount of rent" from the language of the Lease alone because, under the definition of the "amount of rent" we have adopted, we cannot determine the total number of dollars Goodin was to pay in Base Rent in a given period for the possession and use of the Property. Without a

---

[12] MPI does not argue that the *completed* but *unexecuted* Commencement Certificate detailing Goodin's rent obligations can be considered when determining whether the Lease set forth the "amount of rent" for the purposes of WIS. STAT. § 704.03(1), as opposed to the incomplete Commencement Certificate that is attached to the executed Lease. Therefore, we do not address the completed Commencement Certificate in our analysis.

square footage number to which the $5.50-per-square-foot rate can be applied, the amount of Base Rent cannot be determined from the language of the Lease with reasonable certainty by a disinterested third party. *See 303, LLC*, 344 Wis. 2d 364, ¶¶11-12 (determining that an offer to purchase land did not satisfy the statute of frauds because "[a] disinterested person examining the offer to purchase could not specify with reasonable certainty what land was subject to the right of first refusal."). Accordingly, a lease that sets forth the "amount of rent" based on a square footage but fails to set forth the square footage does not, on its face, satisfy the "amount of rent" requirement in WIS. STAT. § 704.03(1). On this basis, we reject MPI's argument that the language of the Lease itself satisfies the statute of frauds requirements in § 704.03(1).[13]

¶30     Before addressing MPI's alternative arguments about the "amount of rent" requirement in WIS. STAT. § 704.03(1), we set forth some general principles. Neither party disputes that, as determined by the circuit court, one way the "amount of rent" requirement in § 704.03(1) could be satisfied is in the form of an equation when the lease sufficiently details the factors needed to calculate rent using the equation. Indeed, as the circuit court explained, the unambiguous

---

[13] MPI also argues that the circuit court incorrectly relied on WIS. STAT. § 706.02 when it concluded that the Lease failed to sufficiently set forth Goodin's obligation to pay Base Rent. Although the circuit court did not explicitly cite to WIS. STAT. § 704.03(1) in this discussion, there is no reasonable way to interpret the court as saying that it is § 706.02, rather than § 704.03(1), that imposes the obligation to set forth the "amount of rent." The court's citation to § 706.02(2) concerned its rejection of MPI's argument that the square footage referenced in documents other than the Lease (the Listing and the RFP) can be considered in ascertaining the "amount of rent" requirements of § 704.03(1). This did not represent the court incorrectly stating that § 706.02 requires the Lease to set forth the "amount of rent." But even if MPI were correct that the court proceeded under the wrong statute, that does not affect our analysis because we may affirm on different grounds than those relied on by the circuit court. *See State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 ("On appeal, we may affirm on different grounds than those relied on by the trial court.").

language of § 704.03(1) does not require "a monthly or annual rent in dollars as opposed to a rent owed per square foot.… Indeed, it could also be an exchange of services as rent, such that there is no dollar amount set out." The court did caution, however, that if parties use a rent that is based on a price per square foot, "the Lease must sufficiently describe all … parts of the equation needed to determine rent in such circumstances" so that "a disinterested third party, such as this Court, can read the Lease and know the rent obligation."

¶31 We agree with the circuit court that one way a lease or contract may satisfy the "amount of rent" requirement in WIS. STAT. § 704.03 is by an equation, provided that the factors needed in the equation to determine the amount of rent can be ascertained by a "disinterested third party." *See **id.***, ¶11. Our determination that the "amount of rent" requirement for leases in § 704.03(1) could be satisfied by an equation is the uncontroversial application of the principle of whether a "disinterested person could discern with reasonable certainty" that a requirement under the statute of frauds is satisfied, such as when considering whether the land at issue was sufficiently identified to satisfy the statute of frauds. *See* WIS. STAT. § 706.02(1)(b) (a conveyance regarding a land transaction subject to the statute of frauds must identify the land); *see also **303, LLC***, 344 Wis. 2d 364, ¶11 (an offer to purchase did not satisfy the statute of frauds because "[a] disinterested person examining the offer to purchase could not specify with reasonable certainty what land was subject to the right of first refusal"); ***Wadsworth***, 53 Wis. 2d at 624 (a land conveyance referring to a "farm" was not sufficiently definite under the statute of frauds because a person might not know to a "reasonable certainty" what parcel or parcels the document was describing). In sum, the "amount of rent" requirement in § 704.03(1) may be satisfied in a lease or contract in the form of an equation, provided that the factors needed to calculate

rent in the equation are sufficiently described such that a disinterested third party could ascertain the amount of rent owed in a given period with "reasonable certainty." We now turn to MPI's alternative arguments, some of which involve the application of this principle.

¶32 MPI alternatively argues that the amount of Base Rent can be determined from the $5.50-per-square-foot rate provided in the Lease because Goodin was aware of the square footage on which the Base Rent was to be calculated. Specifically, the square footage was stated in the Listing and in the RFP as 19,800 square feet (the square footage of the warehouse). Therefore, MPI reasons that Goodin knew the amount of Base Rent owed under the Lease and is instead motivated to contest the Lease in an attempt to avoid the almost $22,000 in annual Ground Lease payments assigned to it as "Additional Rent." This argument fails because our inquiry is not the information known by any Goodin representative, but what the parties put in the contract that they executed. *See Stuesser*, 19 Wis. 2d at 596. Likewise, Goodin's motivation in contesting the Lease is of no import when determining whether the Lease satisfies the statute of frauds. *See id.* (the fact that a party was motivated to get out of the contract for reasons not related to a violation of the statute of frauds is not of consequence when applying the statute of frauds).

¶33 As its next alternative argument, MPI argues that, assuming that the Base Rent amount is ambiguous or uncertain, the issue can be resolved by considering extrinsic evidence, including the RFP and the Listing for the Property, each of which sets forth the square footage amount to be used to calculate the Base Rent. As a result, MPI argues that Goodin had "all of the information it needed to know the final, full amount of the Base Rent."

¶34 As noted, in determining whether the Lease satisfies the pertinent statute of frauds requirements, our focus is on "what the [conveyance] in fact describes," not what the parties subjectively intended. *See 303, LLC*, 344 Wis. 2d 364, ¶12. That is, the statute of frauds analysis focuses on the written document that memorializes a transaction. It is true that a court may consider extrinsic evidence in limited circumstances when determining whether a document complies with the applicable statute of frauds. This is the teaching of *Stuesser*, a case involving a conveyance of an interest in land. In that case, our supreme court explained that, before extrinsic evidence can be used to "make reasonably certain an indefinite description of property for purposes of satisfying the statute of frauds, the description in the memorandum must furnish some foundation, link or key to the oral or extrinsic testimony which identifies the property." *Stuesser*, 19 Wis. 2d at 594. The court emphasized that such extrinsic evidence may only be considered for the purpose of "identification" and "ma[king] certain" the information required by the statute of frauds, not for the purpose of supplying that information. *Id.* at 594-95. In a recent case involving WIS. STAT. § 706.02(1)(b)'s requirement that the conveyance "identif[y] the land," this court summarized the rule regarding extrinsic evidence as follows:

> [Extrinsic] evidence in the context of the statute of frauds does not operate to supply the fatal omissions of the writing but rather to render the writing intelligible. A clear distinction must be drawn between the proper admission of extrinsic evidence for the purpose of applying the description to identified property versus the improper supplying of a description or adding to a description that on its face is insufficient.

*303, LLC*, 344 Wis. 2d 364, ¶16 (citing 72 AM. JUR. 2D *Statute of Frauds* § 227 (2012)).

¶35     MPI's central alternative argument focuses on the use of extrinsic evidence in statute of frauds cases.  MPI recognizes that we have previously determined that, "[b]efore parol evidence can be used in the context of the statute of frauds, the description in the conveyance must furnish some foundation, link or key to the … extrinsic testimony that identifies the property."  *Id.*, ¶12 (citations omitted).  MPI argues, however, that the limitations on the use of extrinsic evidence set forth in *Stuesser* and *303, LLC*, apply only to the requirements in WIS. STAT. § 706.02 regarding what all conveyances of land must include, and not to the requirements in WIS. STAT. § 704.03(1) that are particular to leases exceeding a one-year term, such as the "amount of rent."  Instead, MPI contends that, when there is an ambiguous or uncertain term in a lease with respect to the requirements of § 704.03, the "normal rules of contract interpretation apply," and any extrinsic evidence of the parties' intent can be considered, "so long as that evidence clarifies and does not contradict or vary the terms of the Lease."  We are not persuaded that the "foundation, link or key" principle applies only to the requirements under § 706.02 and that the "normal rules of contract interpretation apply" to the additional requirements in § 704.03 for leases exceeding a one-year term.

¶36     We first note that this argument was not made by MPI in the circuit court.  In fact, MPI argued in its summary judgment briefing to the court that the "foundation, link or key" principle *does* apply to the requirements of WIS. STAT. § 704.03(1), including the "amount of rent" requirement.  Under the forfeiture rule, "issues not presented to the trial court will not be considered for the first time at the appellate level."  *Shadley v. Lloyds of London*, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838.

¶37     However, we may still address a forfeited argument if it involves a question of law rather than of fact, if the question of law has been briefed by both parties, and if the question of law is of sufficient public interest to merit a decision. *State v. Ward*, 2000 WI 3, ¶45, 231 Wis. 2d 723, 604 N.W.2d 517. Here, MPI's argument involves a question of law, was briefed by both parties, and is of sufficient public interest to merit a decision. Therefore, we address MPI's argument even though it was forfeited.

¶38     MPI argues that WIS. STAT. § 704.03 does not include any provision that limits the types of documents or evidence that can supply the amount of rent or other consideration, in contrast with WIS. STAT. § 706.02(2), which allows, as pertinent here, a conveyance to satisfy the requirements in § 706.02(1) "[b]y specific reference to extrinsic writings in existence when the conveyance is executed." This argument fails for the following reasons.

¶39     MPI cites no persuasive legal authority for the proposition that this statutory difference should result in separate rules concerning the consideration of extrinsic evidence between the two statutes. Indeed, the rationale employed by our supreme court in rejecting the general rules for contract interpretation in WIS. STAT. § 706.02 applies with equal force to the consideration of extrinsic evidence in WIS. STAT. § 704.03(1): "The indefiniteness of a description for the purpose of the statute of frauds is not to be treated as an ambiguity in the contract and resolved by principles applicable to ambiguities of valid contracts" because "[n]ot much would be left of the statute of frauds if all [extrinsic] evidence were probative to make certain the uncertainties of a [contract]." *See Stuesser*, 19 Wis. 2d at 596; *see also Prezioso*, 358 Wis. 2d 714, ¶27 ("[T]he statute of frauds requires that parol evidence of intent be connected in some way to the language of the agreement. Otherwise, courts would effectively be supplying essential terms

22

of the bargain for the parties." (citations omitted)). MPI does not acknowledge that its argument could result in the evisceration of the statute of frauds requirements particular to leases and other contracts in § 704.03(1).

¶40    MPI's argument additionally fails because it is inconsistent with the statutory history of WIS. STAT. §§ 706.02 and 704.03. *See State ex rel. DNR v. Wisconsin Ct. of Appeals, Dist. IV*, 2018 WI 25, ¶15, 380 Wis. 2d 354, 909 N.W.2d 114 (statutory history may be considered when determining the meaning of a statute). Sections 706.02 and 704.03 were both enacted in 1970. *See* 1969 Wis. Laws, ch. 285, § 23; 1969 Wis. Laws, ch. 284, § 25. Before this date, all land transactions (including leases for a term longer than one year) were governed by one statute of frauds, WIS. STAT. § 240.06 (1967-68).[14] As a result, the "foundation, link or key" rule described in *Stuesser* in 1963 applied to the statute of frauds requirements for all land transactions, including leases exceeding a one-year term. The applicability of the "foundation, link or key" rule to leases exceeding a one-year term was not affected by the repeal of § 240.06 (1967-68) or the enactment of §§ 706.02 and 704.03. In a "comment" to the newly enacted § 704.03, the legislature wrote that: "This section constitutes a Statute of Frauds so far as leases are concerned. It, therefore, replaces [§] 240.06 as to leases. The section incorporates the basic Statute of Frauds section, which is [§] 706.02 and has further requirements particularly applicable to leases." 1969 Wis. Laws, ch. 284, § 25 cmt. This comment confirms that the "foundation, link or key" rule

---

[14] This statute provided, in relevant part: "No estate or interest in lands, other than leases for a term not exceeding one year … shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing." WIS. STAT. § 240.06 (1967-68).

that had applied to transactions governed by § 240.06 (1967-68) continues to apply to the requirements set forth in §§ 706.02 and 704.03.

¶41    Having rejected MPI's argument that the "normal rules of contract interpretation" apply when considering extrinsic documents in a statute of frauds context under WIS. STAT. § 704.03(1), we now consider whether extrinsic evidence can make up for the Lease's failure to set forth the square footage necessary to calculate the "amount of rent" as required by § 704.03(1). In its alternative argument, MPI characterizes the omission of the square footage number as rendering the Base Rent owed in the Lease as "ambiguous or uncertain," which can be resolved by considering the Listing and the RFP, both of which state that the applicable square footage amount for the Base Rent calculation is 19,800 square feet. We disagree. As explained above, extrinsic evidence may be used to "make reasonably certain" a term required by the statute of frauds only if the Lease furnishes some "foundation, link or key" to the extrinsic evidence. *Stuesser*, 19 Wis. 2d at 594. Here, however, the Lease does not provide a connection to the Listing or the RFP. Neither document is referenced in the Lease, nor is there any indication in the Lease that the amount of rent is to be defined by reference to a square footage figure set forth in a separate document (other than the incomplete Commencement Certificate attached to the executed Lease, which also fails to set forth the applicable square footage).

¶42    Moreover, the Lease does not contain a link to any other extrinsic evidence from which the square footage needed to calculate Base Rent could be ascertained. For instance, the Lease does not define the square footage by reference to any extrinsic physical evidence. Although the Lease defines the Property at issue as "[a]ll land and buildings located at 1438-1458 Wright Street, Madison, Wisconsin," the Lease does not define the square footage for the

purposes of Goodin's rent obligation as the total square footage of the land, the total square footage of the warehouse, or some combination or fraction of either of them. Without a definitive "foundation, link or key" to any such extrinsic evidence, the Lease cannot satisfy the statute of frauds because there is no way for a disinterested person to determine with reasonable certainty the amount of Base Rent owed.[15]

¶43    In sum, the Lease does not satisfy the "amount of rent" requirement in WIS. STAT. § 704.03(1) because it fails on its face to state the amount of Base Rent owed, it fails on its face to provide all of the information necessary to calculate the Base Rent, and it fails to provide a "foundation, link or key" to extrinsic documents that could supply the square footage necessary to calculate the "amount of rent" owed as Base Rent.

¶44    We now consider Goodin's alternative arguments regarding the Lease's compliance with other statute of frauds requirements. We note that we ordinarily would not address Goodin's alternative arguments as to the validity of the Lease when our "amount of rent" determination may dispose of the dispute. However, the validity of the Lease is not the end of the matter—the Lease might still be enforced on remand under the common law doctrine of contract reformation, as discussed below. In other words, the Lease's failure to set forth

---

[15] Goodin also argues that extrinsic evidence of the square footage cannot be considered because the Lease contains an integration clause. We need not address this argument because our conclusion regarding the Lease's lack of a foundation, link or key to any extrinsic evidence is dispositive. *Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

the "amount of rent" is not necessarily dispositive of the controversy. For this reason, we address Goodin's alternative arguments.

¶45    As alternative arguments, Goodin contends that the Lease violates the statute of frauds in two other respects: (1) it fails to set forth a "reasonably definite description of the premises" as required by WIS. STAT. § 704.03(1); and (2) it fails to set forth certain "essential terms" as required by WIS. STAT. § 706.02(1)(c). For the following reasons, we reject Goodin's alternative arguments.

¶46    First, Goodin argues that the Lease does not contain a "reasonably definite description of the premises" as required by WIS. STAT. § 704.03(1) because the Lease does not include a "legal description and/or attached map or diagram depicting or fully describing the Premises." We are not persuaded. The unambiguous language of § 704.03(1) requires only a "reasonably definite" description of the premises, not a legal or pictorial description. Here, the Lease defines the "Property" that is to be leased as "[a]ll land and buildings located at 1438-1458 Wright Street, Madison, Wisconsin (Parcel Number: 081032106991)." This description is "reasonably definite" because it not only sets forth the address and parcel number of the property to be leased, but also provides that the Lease applies to all the land and buildings on that property. This description leaves no room for reasonable dispute as to the property that is subject to the Lease.

¶47    Second, Goodin argues that the Lease violates the statute of frauds because it does not "itemize or monetize 'Additional Rent' or 'Operating Expenses,'" which Goodin contends are "key and essential terms that must be set forth with particularity." We interpret this argument as arising under WIS. STAT. § 706.02(1)(c), which requires that the Lease identify "the interest conveyed and

26

any material term … upon which the interest is to arise, continue or be extinguished, limited or encumbered."[16]  Even if we were to assume that these terms are "material," this argument fails because Goodin does not explain or develop an argument, supported by legal authority, that the Lease's purported failure to "itemize or monetize" these terms violates § 706.02(1)(c).  Subpart (1)(c) requires only that such terms be "identifie[d]."  For these reasons, we reject Goodin's argument that the Lease provisions regarding "Additional Rent" and "Operating Expenses" violate the statute of frauds requirements set forth in § 706.02(1)(c).  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

### III.  Equitable Relief

¶48  MPI argues in the alternative that the Lease may be enforced in equity if it does not satisfy the statute of frauds.  According to MPI, the Lease may be enforced by equitable reformation or equitable estoppel pursuant to WIS. STAT. § 706.04, the statute governing equitable remedies for transactions that are subject to WIS. STAT. ch. 706 and do not satisfy the statute of frauds requirements set forth in WIS. STAT. § 706.02.  In the alternative, MPI argues that the Lease may be reformed pursuant to the common law doctrine of contract reformation.

---

[16] In support of its argument, Goodin may intend to implicitly reference the portion of *303, LLC*, in which this court stated:  "The statute of frauds requires that if one wishes to enforce a contract for the sale/purchase of real estate, the contract must be in writing, *set forth all the essential terms with particularity*, and be signed by all parties to the transaction."  *303, LLC v. Born*, 2012 WI App 115, ¶1, 344 Wis. 2d 364, 823 N.W.2d 269 (emphasis added).  If so, Goodin's argument would still fail because *303, LLC*, did not create a separate requirement for "essential terms" under the statute of frauds under WIS. STAT. § 706.02(1).  Rather, *303, LLC*'s reference to "essential terms" merely paraphrases the specific requirements a conveyance must include under § 706.02(1).

27

¶49    For the following reasons, we conclude that the equitable remedies set forth in WIS. STAT. § 706.04 are not available to remedy statute of frauds deficiencies in leases under WIS. STAT. § 704.03(1) concerning the additional requirements that go beyond the requirements of WIS. STAT. § 706.02(1), including to remedy the absence of the "amount of rent."   But while MPI preserved the issue of common law contract reformation for appellate review and sufficiently developed that argument on appeal, this issue was not addressed by the circuit court.   Accordingly, we remand for further proceedings to determine whether the "amount of rent" issue can be remedied and the Lease enforced pursuant to the common law doctrine of contract reformation.

## A.  Standard of Review for Equitable Relief

¶50    Our review of whether the Lease may be enforced in equity proceeds in two steps.   First, we must determine whether an equitable doctrine can be applied in a particular case, which is a question of law that we review independently.   *Prezioso*, 358 Wis. 2d 714, ¶19.   Second, if equitable relief is available as a matter of law, we review the circuit court's determination of whether to award such relief for an erroneous exercise of discretion. *Id.*, ¶20.   The court properly exercises its discretion if the court "examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach." *Id.*

## B.  Equitable Remedies Under WIS. STAT. § 706.04

¶51    As explained above, WIS. STAT. § 706.04 governs equitable remedies for transactions that are subject to WIS. STAT. ch. 706 and that do not satisfy the statute of frauds requirements in WIS. STAT. § 706.02.   In pertinent part, § 706.04 provides that "[a] transaction which does not satisfy one or more of the

28

requirements of [§] 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved." Sec. 706.04.

¶52    By its unambiguous language, WIS. STAT. § 706.04 applies only to transactions that do not satisfy the requirements of WIS. STAT. § 706.02. For this reason, Wisconsin courts have explicitly concluded that the equitable remedies set forth in § 706.04 are not available for transactions that fail to satisfy the requirements of WIS. STAT. § 704.03. *Rossow Oil Co. v. Heiman*, 72 Wis. 2d 696, 709, 242 N.W.2d 176 (1976) (stating that § 706.04 "does not apply" to transactions that are unenforceable under § 704.03); *Halverson*, 226 Wis. 2d at 114 n.9 ("The equitable relief section in [WIS. STAT. ch. 706] only reaches noncompliance with [§ 706.02]. On it[s] terms it[] does not apply to a failure to reduce terms to writing where required under [WIS. STAT.] ch. 704."). Therefore, the equitable remedies set forth in § 706.04 are not available when, as here, a transaction fails to satisfy the "amount of rent" requirement under § 704.03(1).

¶53    MPI argues that the equitable remedies provided in WIS. STAT. § 706.04 are available here because the Lease is missing only the square footage, not the "amount of rent" under WIS. STAT. § 704.03. We conclude that this argument fails because, as we have explained above, the Lease's failure to include or sufficiently reference the square footage causes the Lease to be insufficient under the interpretation of "amount of rent." In other words, the Lease's failure to include or sufficiently reference the square footage is a failure to satisfy the "amount of rent" requirement in § 704.03, rather than a failure to "satisfy one or more of the requirements of [WIS. STAT. §] 706.02," which is a necessary precondition for granting equitable relief under § 706.04.

### C. Common Law Reformation

¶54    In the alternative, MPI argues that the square footage was omitted by mutual mistake and therefore can be supplied under the common law doctrine of contract reformation.    Before addressing MPI's argument, we first address Goodin's arguments that we should not consider MPI's common law reformation argument.

¶55    Goodin argues that MPI forfeited its common law reformation argument by failing to raise it in a timely manner in the circuit court.  Goodin points out that, when the circuit court ordered additional briefing on the issue of equitable reformation, MPI did not raise the issue of common law reformation until its circuit court reply brief.  In support, Goodin cites to this court's decision in *A.O. Smith Corp. v. Allstate Insurance Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998), in which we stated that we generally decline to address arguments that are raised for the first time in an *appellate* reply brief.

¶56    As discussed above, one rule of forfeiture in the appellate context is that issues not presented to the circuit court will generally not be considered for the first time at the appellate level.  *See Shadley*, 322 Wis. 2d 189, ¶25.  Here, Goodin's forfeiture argument fails because the rule against raising an issue for the first time in a reply brief on appeal does not necessarily apply with equal force in circuit court proceedings.  *See Ruenger v. Soodsma*, 2005 WI App 79, ¶55, 281 Wis. 2d 228, 695 N.W.2d 840 (declining to apply the forfeiture rule when the party raised the issue for the first time in its circuit court reply brief).  As this court has explained, the appellate rule that generally counsels against addressing an issue for the first time in an appellate reply brief stems in part from "the rule of appellate procedure that prohibits an *appellant* from raising new issues in a reply

30

brief on appeal." ***Jones v. Baecker***, 2017 WI App 3, ¶43 n.15, 373 Wis. 2d 235, 891 N.W.2d 823. This rule is also related in part to notions of "fundamental fairness" in that "[i]t is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party." ***A.O. Smith***, 222 Wis. 2d at 492. In circuit court proceedings, however, the sequence of briefing is not always so rigidly prescribed. Parties "may request an additional opportunity for briefing or discovery," and the circuit court will often "hold a motion hearing (giving an opportunity for further argument) before deciding the matter." ***Jones***, 373 Wis. 2d 235, ¶43 n.15; *see also* ***Hart v. Bennet***, 2003 WI App 231, ¶38 n.16, 267 Wis. 2d 919, 672 N.W.2d 306 (declining to apply the forfeiture rule when a party raised a claim for the first time in the party's circuit court response brief because the opposing party could have requested an opportunity to submit additional factual material on that claim).

¶57 In the present case, Goodin responded to MPI's common law contract reformation argument by filing a letter with the circuit court. In this letter, Goodin argued that MPI's argument was not timely because it was raised for the first time in MPI's reply brief and, in the alternative, that MPI did not provide adequate legal support for its argument. When it filed this letter, Goodin had an opportunity to respond to the substance of MPI's reply brief and could have requested additional briefing on MPI's common law reformation claim. *See* ***Village of Richfield v. Whitcomb***, No. 2017AP2524, unpublished slip op. ¶20 n.6 (WI App June 27, 2018) (declining to apply the forfeiture rule when a party filed a letter with the circuit court responding to a new argument raised in the reply brief). It is not at all obvious that the circuit court, in its discretion, declined to address MPI's common law contract reformation claim because it was raised for the first

time in MPI's reply brief. It is also not at all obvious that the circuit court, in its discretion, would have prevented additional briefing as might have been requested. For these reasons, we conclude that MPI may not have forfeited its argument regarding the availability and application of common law contract reformation in the circuit court, but we leave that discretionary determination to the circuit court on remand.

¶58 Second, Goodin argues that we should not address MPI's common law contract reformation argument because that argument is "entirely undeveloped on appeal." Contrary to Goodin's assertion, however, MPI sufficiently developed its argument on appeal. MPI's appellate brief devotes nearly two pages to this topic, in which it provides citations to legal authority and the record and applies the law to the facts in a cogent, organized manner. The argument is not "so lacking in organization and substance that for us to decide [the] issues, we would first have to develop them." *See Pettit*, 171 Wis. 2d at 647.

¶59 Although MPI may have sufficiently preserved its common law contract reformation claim in the circuit court and has now properly presented it to this court on appeal, we decline to address the merits of that claim. Instead, we remand to the circuit court on the issue of common law contract reformation. If the circuit court determines on remand that MPI did not forfeit its common law contract reformation claim, the court should proceed to address the issue of whether the Lease can be reformed under the doctrine of common law contract reformation as a matter of law, and, if so, whether common law contract reformation should be applied under the circumstances present here. It is appropriate for the circuit court to consider these questions in the first instance. *See Ruenger*, 281 Wis. 2d 228, ¶55 (remanding for further proceedings when a

party had not briefed an issue that was raised for the first time in the opposing party's circuit court reply brief).

## CONCLUSION

¶60    For the foregoing reasons, the order of the circuit court is affirmed and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

Recommended for publication in the official reports.